THEODORE SCHULER

v.

DANIEL HOGAN.

*Opinion filed November 1, 1897.*

1. ELECTIONS—*nomination papers deemed valid where no objections are made.* Under section 10 of the Ballot Reform act of 1891 (Laws of 1891, p. 110,) nomination papers and certificates of nomination are deemed valid where no written objections are made thereto, and the county clerk, in such case, may place the nominee's name upon the official ballot.

2. SAME—*will of voters not to be defeated by strict construction of directory provisions.* In an election contest, provisions of the election law which are merely directory will not be so strictly construed as to defeat the result of the election based upon a majority of votes cast, as ascertained by a fair count of the ballots.

3. SAME—*construction of section 4 of Ballot Reform act of 1891.* The requirement of section 4 of the Ballot Reform act of 1891, that the convention or caucus making a nomination for a county office shall represent a political party which cast at least two per cent of the total county vote at the last general election, will be regarded as directory, merely, where no objections to the certificates of nomination by such caucus were made or considered.

4. SAME—*failure to object to certificate of nomination is a waiver.* A candidate for public office making no objection to his opponent's certificate of nomination in the manner provided by statute, waives all objections that may exist to the presence on the official ballot of such opponent's name.

5. SAME—*what need not be recited in certificate of nomination.* A certificate of nomination for a county office need not show upon its face that the nomination was made by a convention or caucus representing a political party which had cast at least two per cent of the total county vote at the last general election.

6. SAME—*extent to which decision of officers on objections to nominations is final.* Under section 10 of the Ballot Reform act of 1891, the decision of a majority of the officers named therein as judges, as to the validity of certificates of nomination, is final as to all objections going to the form of the certificate.

7. SAME—*party may be voted for though not nominated by any caucus or convention.* A candidate for public office is entitled to have his name written upon the official ballot by voters who desire to support him as their choice for office, though he has not been nominated by any convention, caucus or meeting.

8. Same—*what should be shown by contestant in alleging cause of contest.* One alleging as cause for contest that the county clerk arbitrarily and illegally declined to file the contestant's nomination papers and refused to place his name upon the official ballot, should show further that by such action the contestant was deprived of the opportunity of submitting his name as a candidate.

9. Same—*when failure to observe provisions of Election law will not invalidate election.* Failure to observe merely directory provisions of the Election law will not invalidate an election, where no legal voters are deprived of their votes, no illegal voters are permitted to participate and no uncertainty is thereby cast upon the result.

10. Same—*expression of opinion as to true construction of Election law does not invalidate election.* The sending out of circulars by the chairman of a county central committee, stating that in the opinion of good lawyers the writing upon the ballot of the name of a candidate not printed thereon would cause the ballots to be rejected, will not invalidate the election.

11. Appeals and errors—*when decree will be presumed to be sustained by the evidence.* The facts recited in a decree will be presumed, on appeal, to have been found upon sufficient evidence, where the evidence is not preserved by a certificate of evidence.

Appeal from the County Court of Pulaski county; the Hon. R. W. S. Wheatley, Judge, presiding.

Appellant and appellee were opposing candidates for the office of sheriff of Pulaski county at the general election held therein on November 6, 1894. The canvass of the returns of the election by the county clerk and two justices of the peace of said county resulted in the finding, that appellee, Hogan, had received 1099 votes, and that appellant had received 917 votes at said election; and appellee was declared elected, and received his commission, and qualified and entered upon the discharge of the duties of the office. The present petition was filed by appellant on December 3, 1894, in the county court of said county to contest appellee's election. Appellee filed a demurrer to the petition, which was sustained by the court. Appellant amended his petition, and appellee filed a demurrer to the amended petition. The court sustained the demurrer to the first twenty-seven causes of contest set up in the petition, and overruled the demur-

rer to the last eighteen causes of contest therein set up.
Appellee answered the petition as to the last eighteen of
the forty-five causes of contest set up in the petition.

The portion of the petition, to which an answer was
thus filed, and which sets up the eighteen causes of con-
test above referred to, alleges, that, in certain precincts,
certain votes were cast for the petitioner, Schuler, for
said office of sheriff, and ought to have been counted for
him, but that the judges of election by mistake failed to
count them for the petitioner; and also alleges, that cer-
tain votes, which were not cast for the appellee, Hogan,
for said office of sheriff, and which ought not to have been
counted for him, were, by the judges of election of the re-
spective precincts, counted by mistake for the said Hogan
for said office.   The answer denies, that there was any
failure in any of such precincts to count for appellant
the votes that were cast for him, or that any votes were
counted for appellee, which should not have been counted
for him.   A general replication was filed to the answer.
A trial was had on the merits; evidence was heard; a
re-count was had of all the ballots; and a final decree was
rendered in favor of the appellee.   There is no certificate
of evidence, or bill of exceptions, in the record, showing
what proofs were introduced upon the hearing of the
cause.

As to the first twenty-seven causes of contest, to which
the demurrer of the appellee was sustained, appellant
waives all objection to the last twenty of such causes
of contest; and, if he does not actually concede that the
demurrer was properly sustained to said last twenty of
the first twenty-seven causes of contest, he states in his
brief that the sustaining of the demurrer to the same is
error without prejudice.   All that appellant now com-
plains of is the sustaining of the demurrers to the first
seven causes of contest, set up in the amended petition.
The only error assigned upon the record is, that the
county court erred in sustaining appellee's demurrer to

the first seven causes of contest, and each of them, set up in appellant's amended petition.

The orders made by the court below show, that issues were made up; that both parties announced themselves ready for trial; that two persons were appointed and sworn as tellers; that the county clerk was ordered to produce the ballots in open court; and that there was a re-count of all the ballots.

The decree rendered by the court, upon hearing had, is as follows: "Upon a re-count of all the ballots cast at said election for the office of sheriff of said Pulaski county, the court finds that the total votes so cast were 2353; that of this total the said Daniel Hogan received for said office 1243 votes which *both parties agree* should be counted for said Daniel Hogan for said office, and the said Theodore Schuler received for said office 789 votes which *both parties agree* should be counted for said Theodore Schuler for said office; and that of the remaining 321 votes so cast as aforesaid some are claimed as legal votes for said Daniel Hogan, and some as legal votes for said Theodore Schuler; but the court further finds that, whichever way said 321 votes should be counted, the majority for Hogan for said office would be not less than 133 votes; and so the court finds, upon the *undisputed proofs*, that the said Daniel Hogan, having received the highest number of legal votes, was duly elected to said office of sheriff of said county. It is, therefore, ordered and adjudged by the court, that the said Daniel Hogan was duly elected to the office of sheriff of said Pulaski county; and it is further ordered, adjudged and decreed, that the said contestant, Theodore Schuler, pay the costs of this suit, and that execution issue therefor. Thereupon, the said Theodore Schuler excepts to said finding and decree, and prays an appeal to the Supreme Court." Said decree is signed by the judge of the county court, and the following statement is made in writing at the foot of it, signed by the solicitors for both parties, to-wit: "Above decree

is satisfactory to both parties." The present appeal is prosecuted to this court from the decree so entered.

The first seven causes of contest, set up in the amended petition, to which the demurrer was sustained, and the sustaining of which is now assigned for error, are sufficiently stated in the opinion of the court.

LANSDEN & LEEK, and JAMES B. CRANDALL, for appellant.

GREEN & GILBERT, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The petition represents, that the appellee was not legally elected to said office of sheriff at the general election held in Pulaski county, but that the petitioner was legally elected to said office; and the petitioner shows to the court "the following reasons, why the said Daniel Hogan was not elected to said office of sheriff of said county of Pulaski at the general election held in said county of Pulaski, and why your petitioner was legally elected to said office of sheriff of said county of Pulaski at said general election held in said county of Pulaski, to-wit:" The petition then sets forth the seven causes of contest, as to which the demurrer was sustained.

*First*—It is alleged as the first cause of contest, that appellee's name was by the county clerk of said county placed upon the official ballot, as the candidate of the republican party of said county for the office of sheriff, by virtue of a certificate of nomination of a caucus or meeting, representing the republican party of said county, when in fact the republican party of said county did not, at the general election held in said county next preceding the election, which was held on the 6th day of November, 1894, poll at least two per cent of the entire vote cast in said county at said general election held therein next preceding the election of November 6, 1894; and it

is charged, that the republican party of said county had no legal right to nominate appellee as its candidate for said office, and that appellee's name was by the county clerk wrongfully and illegally placed upon the official ballot used at said election.

The second cause of contest is substantially the same as the first, except that it avers, that the republican party of said county did not nominate any candidates to be voted for at the general election held therein next preceding the election of November 6, 1894, and did not, as a party, poll any votes whatever in said county at said general election.

The demurrer admits the allegation, that the republican party of the county did not, at such general election next preceding the election of November 6, 1894, poll at least two per cent of the entire vote cast in said county at said general election. The first question then is, whether the election should, in such a contest as this, be declared void, for the reason thus stated.

The first cause of contest, as thus set up, does not state, that appellant filed any objections to appellee's certificate of nomination, or that any objections were considered by the officials, authorized by the statute to pass upon such objections. Section 10 of the Australian Ballot law provides, that "the certificates of nomination and nomination papers being so filed and being in apparent conformity with the provisions of this act, shall be deemed to be valid, unless objection thereto is duly made in writing. * * * Such objections or questions arising in the case of nominations of candidates for county officers, shall be considered by the county judge, county clerk and State's attorney for such county, and the decision of a majority of said officers shall be final." (3 Starr & Cur. Stat. pp. 565, 566). No statement is made in the first cause of contest, going to show that the certificate of nomination was not in apparent conformity with the provisions of the act. It is, therefore, to be presumed,

that it was in apparent conformity with such provisions. As no objections in writing were filed to it, it was by the express terms of the act "deemed to be valid." The county clerk, therefore, had a right to suppose, that it was valid, and to place the name of the appellee upon the official ballots.

In declaring that the certificate shall be deemed to be valid, unless objection thereto is duly made in writing, the statute merely makes the certificate *prima facie* evidence of a valid nomination. By the express terms of the statute, such *prima facie* case of validity may be overcome by objections filed. A provision, which thus makes an instrument *prima facie* evidence, is nothing more than an exercise by the legislature of its undoubted power to prescribe the rules of evidence. (*Chicago, Burlington and Quincy Railroad Co.* v. *Jones*, 149 Ill. 361).

Section 10, as above quoted, gives to the county judge, county clerk and the State's attorney power to consider objections to the certificate of nomination, or to consider "questions arising in the case of the nominations of candidates for county officers." If appellant was of the opinion, that the certificate was defective, or null and void, for the reason stated, he should have filed his objections before the election, and obtained a consideration of them by the officials thus designated. Section 10 of the act requires, that the certificate of nomination shall be filed with the county clerk at least thirty days before the day of the election. There was, therefore, sufficient time to file objections, and to have them considered.

The present petition is filed under section 113 of chapter 46 of the Revised Statutes in regard to elections. Proceedings under this section and the sections following it for the contesting of an election are prescribed "for the purpose of finding out how many votes were cast for or against a candidate, or for or against a measure, and thereby ascertaining the will of the people." (*Allerton* v. *Hopkins*, 160 Ill. 448; *County of Lawrence* v. *Schmaulhausen*,

123 id. 321). "It has always been held in this State, that, if the intention of the voter can be fairly ascertained from his ballot though not in strict conformity with the law, effect will be given to that intention; in other words, that the voter should not be disfranchised or deprived of his right to vote through mere inadvertence, mistake or ignorance, if an honest intention can be ascertained from his ballot." (*Parker* v. *Orr*, 158 Ill. 609). Inasmuch as the purpose of the contest is the sustaining of the will of the voters and to give effect to the intention of such voters, provisions of the statute, which are merely directory in their character, will not be so construed as to defeat the result of an election, which is based upon the majority of the votes cast at the election and which has been ascertained by a fair count of the ballots.

Wherever a statute does not expressly declare, that particular informalities avoid the ballot, its requirements will be considered as directory only. (*Parker* v. *Orr, supra; State* v. *VanCamp*, 36 Neb. 91; Wigmore on Australian Ballot System,—2d ed.—p. 193). So far as this contest is concerned, and in view of the fact that no objections to the certificate were filed or considered by the proper authorities, we are inclined to regard the requirement, that the convention, caucus or meeting making the nomination, should represent a political party, which at the general election next preceding, polled at least two per cent of the entire vote cast in the county, as being merely directory, and not mandatory in its character. (*State* v. *Norris*, 37 Neb. 299). The appellee had a right to have his name written by the voters upon the ballot, even if he had not been nominated for the office at all by any convention, caucus or meeting. (*Sanner* v. *Patton*, 155 Ill. 553). The requirement, that the nomination of a political party shall be placed upon the ballot under the party appellation as designated in the certificate of nomination, is intended as a guide to the voter. But the voter has nothing to do with the preparation of the ballot, and,

therefore, he cannot be deprived of the right to have his vote counted for the candidate of his choice, because the ballot does not give the title of the political party to which his candidate belongs. A candidate should not be permitted to lie by, and point out such objections as the present after the election has been held. To permit such a course would be to defeat a fair expression of the will of the people. Where a candidate for public office makes no objection to the certificate of nomination of his opponent before the election, when the statute provides for the time and mode of presenting such objections, he should be regarded as having waived all objections, that may exist to the presence on the official ballot of any names of nominees not properly entitled to be there. (*Bowers* v. *Smith*, 111 Mo. 45; *Allen* v. *Glynn*, 17 Col. 338). If the county clerk had improperly put the name of the appellee upon the ballot, this would not destroy the efficacy of the ballots cast for any other candidate, who was legally and properly nominated and certified. (*Smith* v. *Harris*, 18 Col. 274).

For the reasons stated, we are of the opinion that the demurrer to the first and second causes of contest was properly sustained.

*Second*—It is alleged as a third cause of contest, that the certificate fails to show upon its face, that the republican party, at the general election held in said county next preceding the election of November 6, 1894, polled at least two per cent of the entire vote cast in said county, and that, for this reason, the certificate was illegal and void. The statute does not require, that the certificate of nomination should state what is here alleged to have been improperly omitted from it. Section 6 of the Australian Ballot law requires, that all certificates of nomination, and all nomination papers, shall, besides containing the names of the candidates, specify as to each the office to which he is nominated, the party or political principles which he represents expressed in not more than five

words, and his place of residence with the street and
number thereof, if any. The certificates are required to
be signed by the presiding officer and secretary of the
convention, caucus or meeting, who must add their signa-
tures and their places of residence. The certificates shall
also be sworn to by them to be true to the best of their
knowledge and belief, and a certificate of the oath shall
be annexed to the certificate of nomination. (3 Starr &
Cur. Stat. p. 564). But none of these provisions say any-
thing about the statement in the certificate of the per-
centage of the vote cast at any preceding election. Hence,
we are of the opinion that the demurrer to the third cause
of contest was properly sustained.

*Third*—It is alleged, as a fourth cause of contest, that
appellant was nominated as a candidate for said office by
filing with the county clerk, more than thirty days before
November 6, 1894, to-wit: on October 2, 1894, nomination
papers signed by more than one hundred legal voters of
said county, that being more than one qualified voter for
each fifty persons, who voted at the next preceding gen-
eral election in said county; that these nomination pa-
pers were by the county clerk, county judge and State's
attorney of said county, on objections filed thereto, arbi-
trarily and illegally held to be insufficient and inopera-
tive; and that the county clerk illegally refused to place
appellant's name upon the official ballot as a candidate
for said office. A copy of the nomination papers is at-
tached as an exhibit to the fourth cause of contest, and
is made a part thereof. An examination of the certifi-
cate shows, that it does not state the office to which ap-
pellant was nominated, nor the street and number of his
residence, although it does state the office to be filled,
and the city in which appellant resides. In this respect
it fails to comply with section 6 of the Australian Ballot
law. Section 10 of the act provides, that, when the objec-
tions to the certificate of nomination, or questions aris-
ing in the case of such nomination, are considered by

the county judge, county clerk and State's attorney, the decision of a majority of said officers shall be final. The authorities differ as to the extent to which such decision should be held by the courts to be final. (*People* v. *District Court*, 18 Col. 26). In some States it has been held that, where the objections to the certificates of nomination are others than those which involve mere matters of form, the decision of these officers should not be regarded as final. (*People* v. *District Court, supra*). But it is conceded that, where the objections go to the form of the certificate, the decision may be regarded as final. Here, so far as the certificate of nomination itself shows upon its face, the defects were of a merely formal character. If the decision of the three officials named in sustaining the objections filed to the nomination papers was not final, as the act declares that it shall be, appellant could have applied for a writ of *mandamus* to compel the county clerk to put his name upon the official ballot; but he did not do so. The proceedings authorized by the statute must necessarily be speedy and summary, and whatever remedies parties are entitled to, in order to correct or reverse the action of the officials, should be resorted to at once, and before the election occurs. Moreover, appellant does not show in his fourth cause of contest, that, by reason of the sustaining of the objections to his nomination papers and the consequent refusal of the clerk to put his name upon the official ballot, he was deprived of the opportunity of submitting his name to the voters of the county. By the act, the legislature never intended to restrict the voters to persons, whose names are printed on the official ballot. The act confers upon the voter the power to insert in the ballot the name or names of such person or persons, as he may desire to vote for for any office to be filled at the election, and to vote for such persons. The voters in the county had a right to write the name of appellant on their ballots, and place a cross opposite his name and have such ballots counted. Appellant's name

was before the people and he was voted for. Appellant alleges his fourth cause of contest, as one of the reasons, why he was legally elected to the office of sheriff. In determining, whether this fourth cause of contest is demurrable or not, it must be considered in connection with the allegation made by him in his amended petition, that he was legally elected. If he was legally elected, then he must have been voted for by the voters of the county at the election. As the objections were sustained to his nomination papers, and the county clerk refused to put his name upon the official ballot, then his name must have been written upon the ballots by the voters in the manner which this court decided to be permissible in the case of *Sanner* v. *Patton*, 155 Ill. 553. The fact of the submission of his name to the voters in the mode last suggested is not negatived in the fourth cause of contest, as set up in his amended petition. It was not, therefore, error in the court to sustain the demurrer to this cause of contest.

*Fourth*—It is alleged, as the fifth cause of contest, that, after appellant's nomination papers had been held to be insufficient and inoperative by the officials named, and on October 22, 1894, before the official ballot was printed or distributed, appellant offered to file with the county clerk other nomination papers for the purpose of obviating the alleged defects in the original nomination papers filed by him; and that the county clerk arbitrarily and illegally declined to file said second nomination papers of appellant, and refused to place his name upon the official ballot as the candidate for the said office. The second nomination papers thus offered to the county clerk by the appellant are attached to his fifth cause of contest as an exhibit. After an examination of these second nomination papers, we are inclined to regard them as conforming to the requirements of the statute. We think that the clerk ought to have accepted them, and filed them. Section 9 of the act provides, that, in case any

certificate of nomination is held insufficient or inoperative by the officers with whom they may be filed, the vacancy thus occasioned may be filled. That section then provides, that the certificate of nomination, made to supply such vacancy, shall state the fact, that the former nomination has been held insufficient or inoperative, etc. But, after the appellant tendered or offered his second nomination papers to the clerk, there were yet fifteen days before the election; during this time he might have applied for a *mandamus* to compel the clerk to put his name upon the official ballot, but he failed to do so. In addition to this, the second nomination papers show that the objections filed were not filed by appellee, but by one Martin, a voter of said county. It is nowhere alleged, that appellee was responsible in any way for the failure of the clerk to accept the second nomination papers offered to him by appellant. The act of the officer may have been arbitrary and illegal; but section 32 provides, that any public officer, upon whom a duty is imposed by this act, who willfully neglects to perform such duty, or who shall willfully perform it in such a way as to hinder the objects of this act, shall be punished by fine or imprisonment. (3 Starr & Cur. Stat. p. 573). Although the clerk might be liable to punishment under the section last referred to, yet the appellee, who was conceded to have received a majority of the votes cast, should not be deprived of the benefit of those votes, nor should those who voted for him be deprived of the right to have their votes counted, because some official did an act of injustice to appellant. The fifth cause of contest is subject to the same criticism as the fourth, in that it does not show, as a result of the act of the clerk, that appellant was deprived of the opportunity to submit his name as a candidate to the voters. Irregularities, which do not tend to affect the result, are not to defeat the will of the majority. Although the officers of the election may be liable to punishment for a violation of the directory provisions

of a statute, yet the people are not to suffer on account of the fault of their agents. (McCrary on Elections, sec. 93). The purpose of the act in question is "to secure a fair expression of the will of the electors of the State by secret ballot, uninfluenced by bribery, corruption, or fraud." A disfranchisement of the voters by reason of mistakes or errors of judgment on the part of election officers is inconsistent with this purpose. (*Parvin* v. *Winberg*, 130 Ind. 561.)

In addition to what has been said, it may be observed that the decree, entered by the court below, was really a consent decree; and it is recited therein, that 2353 votes were cast, and that appellee received 1243 of these votes, which both parties agreed should be counted for him; and that appellant received 789 of these votes, which both parties agreed should be counted for him. As it was agreed that 1243 votes should be counted for appellee, such agreement amounts to a waiver of all objections to the effect that appellee's name was wrongfully placed on the official ballot and appellant's name wrongfully omitted therefrom through the error, ignorance or mistake of the county clerk. If any of the reasons set forth in the five causes of contest heretofore considered were such reasons, as would justify a court in holding that the election was void, then no votes should have been counted for appellee. Hence, the decree is itself a concession, that the nomination of the appellee was valid, and that appellant's name was properly before the voters of the county. A failure to observe any directory provision in an election law, where no legal voters are deprived of their right to vote, and no illegal voters are permitted to participate in the election, and where no uncertainty is cast on the result, does not affect the validity of the election. (*Parvin* v. *Winberg, supra.*)

After conceding that 1243 votes should be counted for appellee and 789 for appellant, the decree shows, that there remained 321 votes, some of which were claimed as

legal votes for appellee, and some as legal votes for appellant; but the decree found, that, whichever way said 321 votes should be counted, the majority for appellee would be not less than 133 votes. The finding of the decree, therefore, is, that, even if all of the 321 disputed votes had been counted for appellant, appellee would still have had a majority. As there is no bill of exceptions or certificate of evidence in the case, we cannot say that the findings in the decree are not correct. Where a decree recites, that it is by consent, it will be presumed that it is upon sufficient evidence; and where the evidence is not preserved in the record, either by a bill of exceptions or by a certificate of evidence, the facts recited in the decree must be taken to have been found upon sufficient evidence. (*Holderman* v. *Graham*, 61 Ill. 359; *Davis* v. *American and Foreign Christian Union*, 100 id. 313; *Rhoades* v. *Rhoades*, 88 id. 139; *Brown* v. *Miner*, 128 id. 148.)

In view of the recitals in the decree, as well as for the other considerations already presented, we are of the opinion that the demurrer to the fifth cause of contest was properly sustained.

*Fifth*—It is alleged, as a sixth cause of contest, that the chairman of the republican county central committee of Pulaski county, who was county clerk thereof, caused printed circulars to be sent into several of the precincts of the said county, signed by him as chairman, notifying voters that he had been advised by good lawyers that the writing of the name of a candidate by a voter upon the official ballot would amount to a mutilation of the ballot, and would cause the entire ballot to be thrown out or rejected, and that the plan set on foot by having the voter write appellant's name on the official ballot was a democratic trick to cause republican ballots to be thrown out. It is also alleged, as the seventh cause of contest, that some of appellee's influential friends intimidated many voters of the county by notifying them, that, if they wrote appellant's name upon the official ballot, it

would amount to a mutilation of the ballot, and that the entire ballot would be rejected, and that they would be liable to a criminal prosecution for mutilating the official ballot. It is further alleged, that, by this conduct of the chairman of the republican county central committee and of some of appellee's political friends, appellant lost many votes which he would otherwise have received. The demurrer was properly sustained to these causes of contest. A mere expression of opinion, oral or in writing, by a third party as to the true construction, meaning or effect of the Election law, or of some act done under it, cannot vitiate an election or disfranchise a voter. However improper the conduct of these parties may have been, it furnishes no ground for finding that appellee, who had a majority of the legal votes, was not legally elected; or for finding that appellant, who had a minority of the legal votes, was legally elected.

After a careful consideration of all the causes of contest presented by appellant, we have come to the conclusion that the court below committed no error in sustaining the demurrer to the first seven causes of contest.

Accordingly the judgment of the county court is affirmed.

*Judgment affirmed.*