## W. Scott Pierce v. The People ex rel., etc.

1. ELECTIONS—*How Ballots Are to Be Read.*—A ballot should be read in the light of all the circumstances surrounding the election and the voter, and the object should be to ascertain and carry into effect the intention of the voter, if it can be determined with reasonable certainty. It should be reasonably construed, and the intendments be in favor of a reading and construction which will render the ballot effective, rather than in favor of a conclusion which will, on some technical ground, render it ineffective.

2. SAME—*Where the Intention of the Voter Can Be Ascertained from His Ballot.*—If the intention of the voter can be fairly ascertained from his ballot, although it is not in strict conformity with the law, effect will be given to that intention, and he will not be disfranchised or deprived of his right to vote through mere inadvertence, mistake or ignorance, if an honest intention can be ascertained from his ballot.

3. SAME—*Where Ballots Are to Be Counted and Where Not.*—Where there has been a substantial compliance with the law and an honest attempt to follow its directions, and where the voter clearly intended to conform to the law and not to distinguish his ballot, but succeeded only imperfectly, it should be counted; but ballots which disregard the plain requirement of the law and furnish the means by which the secrecy of the ballot may be destroyed should be rejected.

**Information,** in the nature of a quo warranto. Appeal from the Circuit Court of Grundy County; the Hon. CHARLES BLANCHARD, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed January 24, 1902.

E. L. CLOVER and D. R. ANDERSON, attorneys for appellant.

C. F. HANSON, State's Attorney, for appellee; CORNELIUS REARDON, J. W. RAUSCH and McDOUGAL & CHAPMAN, of counsel.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This was an information filed by the state's attorney of Grundy county on the relation of Enos Field, by leave of court, to test the right of W. Scott Pierce to hold the office of alderman of the first ward of the city of Morris. Defendant demurred to the information. The demurrer was overruled, and defendant elected to abide by his

demurrer and refused to answer further. Judgment of ouster was entered against defendant, and he appeals.

At an election for city officers held in said city on April 16, 1901, Pierce and Field were each candidates for the office of alderman of the first ward. Pierce now holds the office, as the result of certain proceedings in the city council after Field had been declared elected and had qualified as such officer. The controversy turns upon eleven ballots, all substantially alike. If these are counted for Field, it is conceded he was elected, and judgment of ouster against Pierce is right. If they are not counted for Field, Pierce is entitled to the office. The petition shows that certain petitioners, sufficient in number under the law, presented the name of Thomas Phillips as a candidate for said office, to be voted for with other candidates for other city offices at said election, under the appellation "Citizens"; that Phillips filed his declination with the city clerk; that a sufficient number of the same petitioners then presented the name of Field to fill the vacancy in the citizens ticket caused by the resignation of Phillips, but because of some clerical error in their petition the clerk refused to insert the name of Field in the official ballot, and on mandamus against the clerk the Circuit Court refused to compel the clerk to insert said name. The eleven ballots in question had a column headed "Citizens" with a circle at the left of that word, and beneath it the several city offices and the names of the respective candidates therefor presented by said petitioners printed underneath, and a square at the left of each name, till it came to the heading "For Alderman— First Ward," the space underneath which was left blank. In each of these eleven ballots the voter wrote the words "Enos Field" or "E. Field" in said blank space and placed a cross in the circle at the left of the word "Citizens" at the head of that column, but did not place a cross in the square at the left of said name "Enos Field."

It is argued these votes should not be counted for Field, because those who cast them did not vote for Field in the manner permitted by law, and because the absence of the

cross in the square opposite Field's name constituted a distinguishing mark which rendered the ballot invalid. It is true that section 23 of the election law in question provides that the voter may prepare his ballot "by writing in the name of the candidate of his choice in a blank space on said ticket, making a cross (X) opposite thereto"; but the same section also provides that he may place a cross at the appropriate place preceding the appellation or title under which the names of the candidates of a party or group of petitioners are printed, "and the ballots so marked shall be counted as cast for all of the candidates named under that title." It is argued by appellant that by the words last quoted is meant "printed under that title," and that such provision does not authorize a name to be counted which is merely written in under that title, without a cross in the square before such name. That the primary object is to ascertain the voter's choice is manifested by section 26, which enacts that "if for any reason it is impossible to ascertain the voter's choice for any office to be filled, his ballot should not be counted for such office." In Behrensmeyer v. Kreitz, 135 Ill. 591, 615, the court said:

"It (the ballot) should be read in the light of all the circumstances surrounding the election and the voter, and the object should be to ascertain and carry into effect the intention of the voter, if it can be determined with reasonable certainty. The ballot should be reasonably construed, and the intendments should be in favor of a reading and construction which will render the ballot effective rather than in favor of a conclusion which will on some technical ground render it ineffective."

That case arose before the act of 1891 under which the election here in question was held. But the same principle has been applied to the later act. In Parker v. Orr, 158 Ill. 609, 615, the court said: "It has always been held in this State that if the intention of the voter can be fairly ascertained from his ballot, though not in strict conformity with law, effect will be given to that intention—in other words, that the voter shall not be disfranchised or deprived of his right to vote through mere inadvertence, mistake or

ignorance, if an honest intention can be ascertained from his ballot. (Citing cases.) The ballot law of 1891 does not, in our opinion, change the rule in this regard, unless to give effect to such intention would tend to destroy the secrecy of the ballot." The court there quoted with approval from Wigmore on the Australian Ballot System, as follows: "The whole purpose of the ballot as an institution is to obtain a correct expression of intention, and if in a given case the intention is clear, it is an entire misconception of the purpose of the requirements to treat them as essentials—that is, as objects in themselves, and not merely as means." The court then further said: "The statute being directory and not mandatory, as to the manner of voting prescribed in section 23, it remains to determine what is its proper construction. In settling this question two objects must be kept in view, viz.: the secrecy of the ballot and the intention of the voter. It was evidently the intention of the legislature to declare what should absolutely destroy a ballot or prevent its being counted, by section 26." After quoting the specific prohibitions of said section 26, the court said: "Observing this mandatory language, if a voter's intention can be gathered from his ballot, without laying down a rule which may lead to a destruction of its secrecy, that intention should be given effect." The court then proceeded to require a substantial compliance with the law and an honest attempt to follow its directions, and held that ballots which disregard the plain requirements of the law and furnish the means whereby the secrecy of the ballot may be destroyed should be rejected, and that ballots where the voter clearly intended to conform to the law, and not to distinguish the ballot, but succeeded only imperfectly, should be counted. (Schuler v. Hogan, 168 Ill. 369.)

We are cited to several cases where our Supreme Court holds that the voter may write in the name of the candidate of his choice and place a cross in a square to the left thereof, and that a ballot thus marked must be counted; but those cases are not decisive that a failure to make the cross

in the square will invalidate the ballot, where the voter has placed a cross in the circle at the head of the column in which he has written the name.

As said in Behrensmeyer v. Kreitz, *supra*, the ballot " is to be read in the light of all the circumstances surrounding the election and the voter." By the demurrer here it is confessed that the petitioners who presented the Citizens ticket containing the names to be voted for under that appellation for the several city offices to be filled at that election, nominated Phillips for alderman of the first ward; that he filed a declination; that a sufficient number of the same petitioners then petitioned to have the name of Field inserted for that office under the same designation; and that they failed because of some informality in the second petition. Obviously the voters who cast the eleven ballots in question desired to vote for all the names so presented for position under the designation "Citizens," including that of Field, whose name had not been printed there. The intention of these voters is plain. They have not violated any express prohibition of the statute. They have placed the name under the printed words "For Alderman—First Ward," in the column headed " Citizens," and have placed a cross in the circle at the left of that appellation, indicating an intention to vote for all the names in that column, including the name so written in. While they have not complied with the direction of section 23 of the act to make a cross opposite the name written in, they have brought themselves within the terms of the further provision of the same section, that where the voter places a cross in the appropriate place preceding the appellation or title under which the candidates of a party or group of petitioners are printed, "the ballot so marked shall be counted for all the candidates named under that title." To hold that the word "named" in the clause last quoted means "printed," would be to add to the stringencies of the act by construction. The legislature could easily have said "printed" if that was what was intended. Finally, it is not "impossible to determine the voter's choice," but on the contrary, that choice is clearly

expressed, and, under section 26 of the act, it ought not to be rejected. We have examined the cases cited by appellant where ballots have been held invalid by our Supreme Court, and find them not in point upon the facts.

We are of opinion this is a proper case for the application of the language above cited from Parker v. Orr, viz.: "If the intention of the voter can be fairly ascertained from his ballot, though not in strict conformity with law, effect will be given to that intention," if it will not tend to destroy the secrecy of the ballot.

It is conceded that if these voters had each inserted a cross in the square preceding the name of Field, the ballots should be counted for him. We are unable to say that the absence of the cross constitutes a distinguishing mark.

The judgment is therefore affirmed.