Parvin v. Wimberg et al.

No. 16,312.

PARVIN v. WIMBERG ET AL.

ELECTIONS.—*Construction of Law by Election Officers.*—A construction of the election law accepted and acted upon by the officers of election, whose duty it is to administer the law, should not be ignored by the courts, unless it is palpably wrong.

SAME.—*Power of Legislature Over.*—It is within the power of the Legislature to prescribe the manner of holding elections and the mode in which electors shall express their choice.

SAME.—*Elector Must Vote in the Manner Prescribed by Law.*—If an elector does not choose to indicate his choice in the manner prescribed by law, he can not complain if his ballot is not counted.

SAME.—*Australian System.—Stamping Ballot.*—An elector can not indicate his choice in any other manner than by stamping one of the squares of his ballot with the stamp; and he can not stamp his ballot elsewhere, and leave the election board to guess at his intention.

SAME.—*Irregularities.—Directory Provision of Law Violated.*—Mere irregularities on the part of the election officers, or their omission to observe some merely directory provision of the law, will not vitiate an election.

SAME.—*Directory and Mandatory Provisions.—What are.*—If a statute expressly declares any particular act to be essential to the validity of an election, or that its omission shall render the election void, the courts must so hold whether the particular act in question goes to the merits or affects the result of the election or not, for such a statute is mandatory, and the courts can not enter into the question of its policy.

SAME.—*Mandatory when Merits of Election are Affected.— Directory when Merits not Affected.*—If a statute simply provides that certain things shall be done within a particular time, or in a particular manner, and does not declare that their performance shall be essential to the validity of an election, they will be regarded as mandatory if they affect the merits of the election, and as directory only if they do not affects its merits.

SAME.—*Departure from Mode of Holding Election, When Does not Invalidate.*—A departure from the mode of holding an election as prescribed by statute, which does not deprive legal voters of their right to vote, or permit illegal voters to participate in the election, or cast uncertainty on the result, does not affect the validity of the election.

SAME.—*Clerk's Initials Indorsed on Wrong Corner of Ballot.*—The statute requiring election clerks to indorse their initials on the ballot is mandatory; but the requirement that they indorse their initials in a particular place is directory only; and a ballot indorsed at an improper place can not for that reason be rejected.

Parvin v. Wimberg et al.

SAME.—*Ballot Placed in Wrong Ballot-Box.*—The fact that the election offi-
cers place a ballot in the wrong ballot-box by mistake will not vitiate
the ballot and authorize its rejection in making the count.

STATUTE.—*Construction.*—*Examining Other Statutes.*—*Legislative Intent.*—
*Meaning Doubtful.*—*Purpose.*—*History.*—For the purpose of construing a
statute and ascertaining the legislative intent the courts will look to
the whole statute and all its parts, and when such intention is so ascer-
tained, it will prevail over the literal import and the strict letter of
the statute; and where the meaning is doubtful and uncertain, the
courts will look into the situation and circumstances under which it
was enacted to other statutes, if there are any on the same subject,
whether passed before or after the statute under consideration, whether
in force or not, as well as to the history of the country, and will care-
fully consider, in this connection, the purpose sought to be accom-
plished.

From the Gibson Circuit Court.

*A. Gilchrist, C. A. De Bruler* and *D. B. Kumler,* for ap-
pellant.

*J. M. Butler, A. H. Snow, J. M. Butler, Jr., J. E. Will-
iamson, P. W. Frey* and *J. I. Walker,* for appellees.

COFFEY, J.—At the November election for the year 1890
the appellant and Henry Stockfleth were opposing candi-
dates for the office of county auditor of Vanderburgh county
in this State.

The board of canvassers having declared the appellant duly
elected, this proceeding was commenced by the appellee Henry
Wimberg before the board of commissioners of that county,
to contest the election upon the alleged ground that Stock-
fleth had received more votes for the office than had been
cast for the appellant.

The cause was appealed to the Vanderburgh Circuit Court,
from which a change of venue was granted to the Gibson
Circuit Court.

In the latter court issues were formed, upon which the
cause was tried by the court, resulting in a judgment against
the appellant.

At the request of the appellant the court made a special

finding of the facts in the case, from which it appears, among other things, that returns of the election were made by the judges of election and canvassed by the board of canvassers, and that it was determined by the convass that the appellant had received 4,745 votes, and that Henry Stockfleth had received 4,735 votes, and thereupon the board declared the appellant duly elected.

It further appears that the appellant received twenty-seven votes at the election which were not counted for him, and that Stockfleth received sixty-one votes which were also rejected by the judges of election, and that the number so received by these parties, and not counted, were not included in the votes canvassed by the board of canvassers, and that the total number of votes cast at the election for the appellant was 4,772, and for Stockfleth 4,796.

The only question discussed by counsel on this appeal are questions arising on the ruling of the court below in over-ruling the appellant's motion for a new trial.

It is insisted by the appellant that the finding of facts above set out is not sustained by the evidence. It is also urged that the circuit court erred in admitting in evidence certain ballots offered by the appellee to sustain the issue tendered by him. It appears by the record before us that the appellee offered in evidence, on the trial of the cause, certain ballots, none of the squares upon which had been touched by the stamp, which ballots were admitted and read in evidence over the objection of the appellant.

As it is perfectly apparent that the court could not have made the finding set out above without counting some of these ballots, the question, therefore, as to whether they were admissible in evidence, and the question as to whether the finding is sustained by the evidence, may very properly be considered together.

The solution of these questions depends upon the construction of the act of the General Assembly, approved March 6th, 1889, known as the "Election Law:"

Parvin *v.* Wimberg *et al.*

Section 26 of this act prescribes the following form of ballot to be used at all subsequent general elections, viz.:

Section 45 of the act provides that "When a voter shall have been passed by the challengers, or shall have been sworn in, he shall be admitted to the election room. * * * On entering the room the voter shall announce his name to the poll clerks, who shall register it. The clerk holding the ballots shall deliver to him one State and one local ballot, and the other clerk shall thereupon deliver to him a stamp, and both poll clerks, on request, shall give explanation of the manner of voting. * * * The voter shall then, and without leaving the room, go alone into any of the booths which may be unoccupied and indicate the candidates for whom he desires to vote by stamping the square immediately preceding their names: * * * *Provided, however,* That if he shall desire to vote for all candidates of one party, * * * and none other, he may place the stamp on the square preceding the title under which the candidates of such party * * are printed, and the vote shall then be counted for all the candidates under that title, unless the name of one or more candidates under another title shall also be stamped, in which case the names of the candidates so stamped shall be counted."

It is contended by the appellant that the provision of this statute requiring the voter to indicate his choice by stamping the square is mandatory, while it is contended by the appellee that such provision is directory only, and that the voter may indicate his choice without touching the square with the stamp.

It is conceded that this law is an entire departure from the modes of voting known and used in this State prior to its passage. Such being the case, before any election was held under this law, the two leading political parties in the State, through the chairman of their respective State central committees, selected six practicing attorneys of the State, conspicuous for their legal learning, to whom the law was referred, with a request that they would construe and interpret it, and prepare instructions for the information and guidance of the electors and election officers of the State.

In the report of these eminent lawyers are found the following instructions, viz. :

"*First.* You must get your ballots of the polling clerks in the election room.

"*Second.* If you want to vote a straight ticket, stamp the square on the left of the name of the party for whose candidates you wish to vote. If you do not wish to vote a straight ticket, then do not stamp the square to the left of the name of your party, but stamp the square to the left of the name of each candidate for whom you desire to vote, on whatever list of candidates it may be.

"*Third.* Do not mutilate your ballot, or mark it, either by scratching a name off or writing one on, or in any other way, except by stamping on the square or squares as above mentioned, otherwise the ballot will not be counted. * * * If a ballot is not stamped on one of the squares at the left of the titles of the tickets, it will be counted for the names with stamps on their squares to the left of them, and no others."

It is fair to presume that the electors and election officers throughout the State accepted this as the true construction of the statute under consideration, and thereupon, in conducting the ensuing election, acted upon it. This construction having been accepted and acted upon by the officers whose duty it was to administer the law, the courts should not now ignore it, unless it is palpably wrong. *Stuart* v.

*Laird,* 1 Cranch, 299; *Martin* v. *Hunter,* 1 Wheat. 304; *Cooley* v. *Board, etc.,* 12 How. 299; *Lithographic Co.* v. *Sarony,* 111 U. S. 53.

The construction placed upon the statute by the committee to whom it was referred is not palpably wrong, but, on the contrary, we think, the conclusion it reached is the correct one.

The doctrine that it is within the power of the Legislature to prescribe the manner of holding general elections, and to prescribe the mode in which the electors shall express their choice, is too familiar to call for the citation of authority.

In this instance it has declared that the mode by which the elector shall express his choice shall be by stamping certain designated squares on the ballot. There is nothing unreasonable in the requirement, and it is simple and easily understood. Furthermore, if he is illiterate, or is in doubt, the law makes ample provision for his aid. If he does not choose to indicate his choice in the manner prescribed by law, he can not complain if his ballot is not counted. *Kirk* v. *Rhoads,* 46 Cal. 398.

If we hold this statute to be directory only, and not mandatory, we are left entirely without any fixed rule by which the officers of election are to be guided in counting the ballots. If ballots are to be counted when no square is stamped, at what distance from the square shall the stamp be placed before it can be rejected?

One board of election may reach one conclusion as to a class of ballots where the squares are not stamped, and another board may reach another and different conclusion as to the same class; and thus uncertainty and confusion prevail in a matter which the Legislature intended, we think, should be certain.

By an act of the General Assembly, approved March 6th, 1891 (Acts of 1891, p. 124), section 45 of the act now under consideration was amended so that a stamp placed upon a

ballot which does not touch a square thereon is declared to be a distinguishing mark, and the ballot is not counted.

This amendment was intended, we think, to make certain that which prior to its passage was left, in some measure, to construction, but it only makes certain that which was intended by the Legislature when it passed the original section.

But little, if any, aid can be derived from the adjudged cases under the English and Canadian statutes, by reason of the marked difference between those statutes and the one we are now considering, but the cases under those statutes hold that unless there is a substantial compliance by the electors with the provisions of the statute the ballot can not be counted. *Hazwell* v. *Stewart,* 1 Ct. of Sess. 925; *Robertson* v. *Adamson,* 3 Ct. of Sess. 978; 20 Journal of Jurisprudence, pp. 402–407; *Grant* v. *McCallum,* 12 Can. Law Journal, 113; *Olmstead* v. *Carpenter,* Hodg. El. Cases, 531; *Hawkins* v. *Smith,* 8 Can. Sup. Court, 676; Thornton Indiana Municipal Law, section 4709a.

Each ballot constitutes a separate and distinct written instrument, and, like all other written instruments, its construction is for the court. Of the one hundred and fifty-four ballots appearing in the record before us, not to exceed nineteen could by any possibility be counted for either the appellant or Stockfleth. In order that the elector may have his ballot counted at all, he must touch some one of the squares with the stamp. He can indicate his choice in no other manner, for this is the only mode prescribed by the law. He can not stamp his ballot elsewhere, and leave the election board to guess at his intention.

In our opinion the court erred in admitting in evidence, in support of the issue tendered by the appellee, ballots, no square upon which had been touched with the stamp. It follows, also, that the facts above set out are not supported by the evidence in the cause, for ballots not so stamped are

not evidence that the elector intended to vote for either of the candidates for county auditor.

It appears from the record before us that in two of the precincts in Vanderburgh county the initials of the poll clerks were indorsed upon the lower right-hand corner of the back of the ballots instead of on the lower left-hand corner, as prescribed by section 34 of the election law. They were all indorsed in the same way. There was no fraud, no intentional violation of the law, but an innocent, honest mistake on the part of the election officers.

It is contended that these ballots should not have been counted, for the reason that the ballots were not indorsed as prescribed by the statute, and that the provisions of the statute requiring the ballots to be indorsed by the poll clerks at a particular place named is mandatory, while it is contended on the other hand that such requirement is directory only.

The general rule is, that mere irregularities on the part of election officers, or their omission to observe some merely directory provision of the law, does not vitiate the election.

Much difficulty, however, is often experienced in determining whether the provisions of a particular statute are mandatory or directory. If a statute expressly declares any particular act to be essential to the validity of an election, or that its omission shall render the election void, the courts, whose duty it is to enforce the law as they find it, must so hold, whether the particular act in question goes to the merits or affects the result of the election or not; for such a statute is mandatory, and the court can not enter into the question of its policy. On the other hand, if a statute simply provides that certain things shall be done within a particular time or in a particular manner, and does not declare that their performance shall be essential to the validity of an election, they will be regarded as mandatory if they affect the merits of the election, and as directory only if they do not affect its merits. McCrary Elections, section 190; Barnes v. Board, etc., 51 Miss. 305; Wheelock's Case, 82 Pa. St.

297 ; *Ledbetter* v. *Hall*, 62 Mo. 422 ; *West* v. *Ross*, 53 Mo. 350 ; *Jones* v. *State, ex rel.*, 1 Kan. 273 ; *Gilleland* v. *Schuyler*, 9 Kan. 569.

In the case of *Gilleland* v. *Schuyler, supra*, it was said by the court : "Questions affecting the purity of elections are in this country of vital importance. Upon them hangs the experiment of self-government. The problem is to secure, first, to the voter a free, untrammeled vote ; and secondly, a correct record and return of the vote. It is mainly with reference to these two results that the rules for conducting elections are prescribed by the legislative power. * * To hold these rules all mandatory, and essential to a valid election, is to subordinate substance to form, the end to the means. Yet on the other hand, to permit a total neglect of all the requirements of the statute, and still sustain the proceedings, is to forego the lessons of experience, and invite a disregard of all those provisions which the wisdom of years has found conducive to the purity of the ballot-box. Ignorance, inadvertence, mistake, or even intentional wrong on the part of local officials should not be permitted to disfranchise a district."

So it has often been held by this court that a departure from the mode of holding an election as prescribed by statute, which does not deprive legal voters of their right to vote, or permit illegal voters to participate in the election, or cast uncertainty on the result, does not affect the validity of the election. *Gass* v. *State, ex rel.*, 34 Ind 425 ; *Lafayette, etc., R. R. Co.* v. *Geiger*, 34 Ind. 185 ; *Dobyns* v. *Weadon*, 50 Ind. 298 ; *Mustard* v. *Hoppess*, 69 Ind. 324 ; *Duncan* v. *Schenk*, 109 Ind. 26.

Judge McCrary, in his work on Elections, section 93, says : "The principle is that irregularities which do not tend to effect the results are not to defeat the will of the majority. * * * The officers of election may be liable to punishment for a violation of the directory provisions of a

statute, yet the people are not to suffer on account of the default of their agents."

Section 34 of the election statute provides that "At the opening of the polls, after the organization of, and in the presence of, the election board, the inspector shall open the packages of ballots in such a manner as to preserve the seals intact. He shall then deliver to the poll clerk of the opposite political party from his own, twenty-five each of the State and local ballots, and to the other poll clerk the stamps for marking the ballots. The poll clerks shall at once proceed to write their initials, in ink, on the lower left hand corner of the back of each of said ballots, in their ordinary hand writing, and without any distinguishing mark of any kind. As each successive elector calls for a ballot the poll clerks shall deliver to him the first signed of the twenty-five ballots of each kind; and the inspector shall immediately deliver to the poll clerks another ballot of each kind which the poll clerk shall at once countersign, as before, and add to the ballots already countersigned, so that it shall be delivered for voting after all of those theretofore countersigned."

The sections following provide for the manner of conducting the election until the close of the polls.

Section 52 provides that "The board shall then proceed to canvass the votes, beginning first with the State ballots and completing them before proceeding with the local ballots, by laying each ballot upon the table, in the order in which it is taken from the ballot-box, and the inspector and the judge of the election, differing in politics from the inspector, shall view the ballots as the names of the persons voted for are read therefrom. In the canvass of the votes any ballot which is not indorsed with the initials of the poll clerks, as provided in this act, and any ballot which shall bear any distinguishing mark or mutilation shall be void and shall not be counted, and any ballot or part of a ballot from which it is impossible to determine the elector's choice of candi-

dates, shall not be counted as to the candidate or candidates affected thereby."

It is not claimed that the failure of the poll clerks to indorse their initials at the place on the back of the ballots indicated by the statute constituted a distinguishing mark, for they were all indorsed alike; but the claim is that the statute is mandatory as to the place upon the ballot at which the initials shall be written. The purpose of construing a statute is to arrive at the intention of the Legislature. For that purpose the courts will look to the whole statute, and all its parts, and when such intention is so ascertained, it will prevail over the literal import and the strict letter of the statute; and where the meaning is doubtful and uncertain the courts will look also to the situation and circumstances under which it was enacted, to other statutes, if there are any upon the same subject, whether passed before or after the statute under consideration, whether in force or not, as well as to the history of the country, and will carefully consider, in this connection, the purpose sought to be accomplished. *Storms* v. *Stevens*, 104 Ind. 46; *Stout* v. *Board, etc.*, 107 Ind. 343; *May* v. *Hoover*, 112 Ind. 455; *Board, etc.*, v. *Board, etc.*, 128 Ind. 295.

A study of the statute upon the subject of elections leaves no doubt that its purpose is to secure a fair expression of the will of the electors of the State, by secret ballot, uninfluenced by bribery, corruption or fraud. The disfranchisement of whole precincts by reason of an honest mistake on the part of election officers is inconsistent with this purpose.

The immediate purpose of the provisions of section 34 is to prevent the counting of fraudulent votes by requiring the poll clerks to indorse their initials upon the official ballots, to the end that they be identified when taken from the ballot-box. This purpose is accomplished as well by the indorsement of such initials in one place as in another on the back of the ballot. Of course, so much of the statute as requires the ballots to be indorsed with the initials of the

poll clerks is mandatory, but we are of the opinion that so much of the statute as requires initials to be indorsed at a particular place on the back of the ballot is directory only, because the purpose of the Legislature is accomplished when the indorsement is made in such manner as to enable the election officers, in conducting the count, to identify it as the official ballot.

Judge Cooley, in his valuable work on Constitutional Limitations, p. 77, says : " Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly, and prompt conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time nor in the precise mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purposes of the statute." See, also, *Martin* v. *Pifer*, 96 Ind. 245; *Middleton* v. *Greeson*, 106 Ind. 18; *In re Douglas*, 58 Barb. 174.

In our opinion the circuit court did not err in refusing to reject the ballots cast in the precincts now under consideration.

By the provisions of section 10 of this statute, the board of county commissioners is required to provide two ballot boxes, one for the reception of the ballots cast for State officers, and another for the reception of the ballots cast for local officers. In canvassing the votes cast at three of the precincts in Vanderburgh county, some of the local ballots were found in the ballot box provided for the reception of the ballots cast for State officers. These ballots bore the initials of the poll clerks, and were properly stamped, but were rejected for no other reason than that they were found in the wrong ballot box. *Prima facie*, these ballots should have been counted. Under the safeguards provided by this statute, it is next to impossible that they could have gotten into the ballot box without being placed there by some of the

election officers. To have placed them in the box unless received from some qualified elector of the precinct would have been, under the statute, a crime. The presumption of law is always against crime, and, without any showing to the contrary, the presumption is that these ballots were placed in the wrong box by the mistake of the election officers.

Judge McCrary, in his work on Elections, section 196, says: " It is a rule, well grounded in justice and reason, and well established by authority and precedent, that the voter shall not be deprived of his rights as an elector, either by the fraud or the mistake of the election officer, if it is possible to prevent it."

The case of *People, ex rel.*, v. *Bates*, 11 Mich. 362, is much in point here. In that case an election was held for State and county and for city officers on the same day and at the same polls. One ballot-box was used for the reception of the ballots cast for State and county officers, and another ballot-box was used for the reception of ballots cast for city officers, but the same judges and inspectors conducted both elections. When canvassing the vote it was ascertained that some of the votes cast for city officers had been deposited in the box used for the reception of the ballots cast for State and county officers. It was held that the ballots so found in the box prepared for the reception of the ballots cast for State and county officers should be counted for the city officers for whom they were cast. The Supreme Court of Michigan said: " The two elections, though held upon the same day, were in law distinct and independent of each other, as much as if they happened on different days; and it is, in fact, only in each alternate year that they can occur together. But, though thus distinct, and the ballots to be deposited in separate boxes, yet as both were held together under the supervision of the same inspectors, with both boxes before them for the reception of ballots, the inspector receiving the ballot might be liable, by honest mistake, occasionally, to deposit a ballot in the wrong

box ; and if he understood that the ballots found in the wrong box were in no case to be counted, he might do the same thing for a fraudulent purpose.    But the elector is not to be deprived of his vote either by the mistake or fraud of the inspector in depositing it in the wrong box, if the intention of the voter can be ascertained with reasonable certainty. To hold otherwise would be to give more effect to the letter than to the manifest purpose of the statute."

In this case, as in all others, it is an easy matter to ascertain whether the local ballots in the two boxes exceed the number of votes cast by the legal voters of the precinct by comparing the number with the poll list.

There are some other questions of minor importance discussed by counsel in their able briefs in this case, but, as they may not arise upon another trial of the cause, we deem unnecessary to decide them now.

Judgment reversed, with directions to the circuit court to grant a new trial.

Filed March 17, 1892.