Jones v. State, ex rel.

---

## JONES v. STATE, EX REL. WILSON.

[No. 18,733. Filed November 15, 1899.]

QUO WARRANTO.—*Information.*—*Pleading.*—*Conclusion.*—An averment in an information, under §1145 Burns 1894, to determine title to an office that the relator was "eligible to be elected and to hold the office" is sufficient without pleading any of the evidentiary facts constituting such eligibility. *pp. 441, 442.*

PRACTICE.—*Striking Out Part of Answer.*—*Pleading.*—No error was committed in striking out part of an answer, where the matter stricken out traversed an averment in the complaint and was admissible under the general denial which was pleaded. *pp. 442, 443.*

ELECTIONS.—*Certificate of Nomination.*—*Failure to Acknowledge.*— The election of a town trustee is not rendered invalid because the certificate of his nomination was not acknowledged by the president and secretary of the convention before some officer authorized to take acknowledgments of deeds, as provided by statute, before its delivery to the town clerk, who was acting as the board of election commissioners of the town, where the certificate was received and acted upon without objection. *pp. 443-449.*

SAME.—*Tickets.*—*Failure to Place Party Emblem at Head of Ticket.*— The failure of the board of election commissioners to place the party's emblem at the head of a ticket will not invalidate the election of a candidate on such ticket, where there were but two lists of candidates on the ticket, and the usual party emblem was placed at the head of the other list of candidates. *p. 449.*

SAME.—*Preparation of Ticket.*—*Failure to Print Directions How to Vote.*—An election fairly conducted and free from fraud will not be

held invalid because the election commissioners, in the preparation of the ballot, failed to have printed at the outer rim of the circle at the head of each list of candidates directions how to vote a straight ticket.  *p. 449.*

ELECTIONS.—*Preparation of Ticket.*—An election for town trustee will not be held to be invalid because, in the preparation of the ballot, the office on both tickets was designated as councilman instead of trustee.  *pp. 449, 450.*

SAME.—*Poll Clerks' Initials.*—The fact that the poll clerks wrote their initials on the upper right hand corner of the ballots instead of the lower left hand corner, as provided by statute, will not invalidate an election.  *p. 450.*

SAME.—*Provisions of Election Law.—Construction.*—All provisions of the election law are mandatory if enforcement is sought before the election in a direct proceeding for that purpose ; but after election they should be held to be directory only, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared in the statute that the particular act is essential to the validity of an election, or that its omission shall render it void.  *p. 451.*

From the Jefferson Circuit Court.  *Affirmed.*

*Simeon E. Leland,* for appellant.

*W. T. Friedley* and *L. V. Cravens,* for appellee.

HADLEY, J.—David Wilson, as relator of the appellee, filed an information, under §1145 Burns 1894, to determine his title to the office of trustee of the town of Hanover and to oust the appellant therefrom.

The information alleges that the relator was, on the 2nd day of May, 1898, and for two years prior thereto, and ever since has been, a resident of the third ward of the town of Hanover and is over the age of twenty-one years, and eligible to be elected and hold the office of trustee of the third ward; that Hanover is an incorporated town; that an election pursuant to the statutes was held in said town, on said 2nd day of May, for the election of town officers, among which was trustee of the third ward; and the relator and defendant were the only candidates for said office voted for; that the total number of votes cast at said election was sixty-seven, of

which the defendant received twenty-seven and the relator forty; and the relator was thereby duly elected to said office for two years; that the certificate of election was issued to the defendant, who did not receive a majority of all the legal votes cast, and refused to the relator who did receive a majority of all the legal votes cast; that, on the 4th day of May, the relator qualified as such trustee by taking the oath prescribed by law for the faithful discharge of his duties; that the defendant since the 3rd day of May has been claiming that he is the duly elected trustee of the third ward and is disputing the relator's title thereto.

Appellant's demurrer to the information was overruled, and this furnishes the ground for his first complaint in this court. His objection to the information is that the averment by the relator "that he was *eligible* to be elected and to hold the office of trustee" is pleading a conclusion and not a fact. We do not think so. Eligibility is as much a fact as ownership; and it has been uniformly held in this State that in a suit to quiet title it is sufficient for the plaintiff to aver ownership generally without pleading the evidence of such ownership. *Rausch* v. *Trustees, etc.,* 107 Ind. 1, and cases cited.

The statutes require that the information shall consist of a plain statement of the facts which constitute the grounds of the proceeding and which show the relator's interest in the matter; and we think the statute and rules of practice are satisfied, in a case like this, by the averment of the ultimate fact of eligibility without pleading any of the evidentiary facts constituting such eligibility. *Reynolds* v. *State, ex rel.,* 61 Ind. 392; *State, ex rel.,* v. *Bieler,* 87 Ind. 320; *State, ex rel.,* v. *Long,* 91 Ind. 351. The information was sufficient, and the demurrer thereto was properly overruled.

Upon appellee's motion the court struck out a part of appellant's answer, and this is also assigned as error. That part of the answer stricken out, so far as it was material to the defense, related to irregularities in the relator's nomina-

tion and certification to the town clerk, and, in effect, traversed the averment in the information that the relator was eligible to be elected trustee, and hence admissible under the general denial which was pleaded. There was no available error in sustaining the motion to strike out.

There was a special finding of facts from which it appears that Hanover is an incorporated town, and on the· 1st Monday of May, 1898, held an election for the selection of town officers under the laws of the State; that, prior to the election, to wit, April 2, 1898, the voters of a political party met in mass convention in the town and nominated a candidate for each of the offices to be filled, including the relator, for trustee of the third ward; that the chairman and secretary of the convention certified a list of the nominations so made, including the name of the relator as the candidate of the party in convention for the office of trustee of the third ward, to be voted for at the approaching May election, and verified said certificate by their several oaths before a notary public, but did not acknowledge the same before some officer authorized to take acknowledgment to deeds; and on the 3rd day of April filed said certificate so authenticated with the clerk of the town; that the relator was a candidate before said convention for trustee of the third ward, and accepted its nomination and became the candidate of his party for said office to be voted for by the people at said election; that, at the time of said convention, the relator was, and had been for two years prior thereto, a *bona fide* resident and legal voter of the third ward of said town, was seventy years of age, and eligible to be nominated by the convention and eligible to the office of trustee of the third ward; that on the 11th day of April, 1898, the voters of another political party met in mass convention in said town and nominated a candidate for each of the offices to be filled at the May election, including appellant for the office of trustee of the third ward; and the chairman and secretary of the convention duly certified the nominations so made, including

the name of appellant as the candidate of the party for the office of trustee for the third ward to be voted for at the May election, which certificate was duly signed by the president and secretary and acknowledged as deeds are acknowledged, and filed with the town clerk on the 12th day of April; that appellant was a candidate before his party convention and accepted its nomination, and was a candidate before the people to be voted for at the election, was a legal voter of the third ward and had been such voter and a resident therein for ten years, was seventy years of age, and eligible to be nominated and eligible to the office of trustee of the third ward; that the relator and appellant were the only opposing candidates and the only ones voted for at said election for said office; that appellant's party convention selected a party title and device to head its ticket and properly certified the same to the town clerk; that the relator's party convention did not select any party device for its ticket; that the town board appointed no board of election commissioners; that the town clerk upon receipt of the two party certificates of nomination acted upon the same and procured the printing of an official ballot containing the names of all the candidates certified to him by the two conventions, including the names of the relator and the appellant; that said official ballot was prepared by the clerk by placing appellant's party device, certified to him, in the circle at the head of his party ticket, and immediately below it the name of the ticket by which his party is generally known, in large letters, and by placing a circle at the head of the relator's party ticket, without any device; and immediately below the circle was printed in large letters the name of the ticket by which his party is usually known; proper squares appeared to the left of each name and office voted for on both tickets, and the words "For Councilman" were used on both tickets, for the words "For Trustee," immediately above the names of both relator and appellant. Neither circle at the head of the ticket had

printed on the outer edge directions how to vote a straight ticket.

Both the relator and appellant were openly announced candidates for the office of trustee of the third ward, and the clerk, of his own motion and without the knowledge or consent of either the relator or appellant, placed their names upon the official ballot as candidates for "Councilman." George Walker was appointed inspector of elections by the town board and received 200 official ballots from the printer and took them to the voting place on the day of the election, and delivered them to the board of election, which was constituted according to law, and the same were by them delivered to the voters as they presented themselves for the purpose of voting. No other ballots were voted than those described. Each ballot voted was indorsed by the poll clerks placing their initials upon the outer and upper right hand corner. Sixty-one legal voters of the town cast their ballot for the opposing candidates for trustee of the third ward; of that number the relator received thirty-seven legal votes and the appellant received twenty-four legal votes. When the election board began to count the votes to ascertain the result of the election, it decided, at the time the first ballot was taken out of the box, not to count any of the ballots that were cast for the relator, for the reason that the ticket upon which his name appeared had at its head no device or emblem, and did fail and refuse to count all such ballots for the reason given and no other; and of the sixty-one ballots cast by legal voters, said board counted only those cast for appellant, to wit, twenty-four. When the refusal to count the ballots cast for the relator was determined upon, a protest was made by King, one of the judges of election, against such refusal, whereupon the ballots cast and not counted were placed in a paper bag and tied with a string, but not sealed, and placed in the custody of the town clerk. There were only sixty-seven ballots cast at said election, and the remainder of the 200 printed were destroyed by burning by the board before

adjournment.  No written protest was indorsed upon the ballots not counted and subscribed by the poll clerks.  A protest was made and written upon the tally sheets and signed by each member of the board and poll clerks.  The town clerk kept the ballots so delivered to him safely in said paper bag, unbroken and unopened, until opened by order of the court upon this trial.  The election board issued to appellant a certificate of election as trustee of the third ward for the term of two years, and appellant took the oath of office and entered upon the discharge of its duties on the 3rd day of May; the relator also, on the 3rd day of May, took the oath of office as trustee of the third ward, and, before the commencement of this suit, demanded of appellant a surrender of said office and the books and papers belonging thereto, which appellant refused.

The conclusions of law are to the effect that the relator was legally elected to the office of trustee of the third ward for two years from the date of his election, and is entitled to the immediate possession of the office, its papers and emoluments, and to damages in the sum of one dollar, and judgment was rendered accordingly, from which this appeal is taken.

Appellant assails the conclusions of law as not sustained by the facts, and vigorously urges the irregularities attending the nomination of the relator, the construction of the official ballot and conduct of the board of election, as invalidating the votes cast for the relator.

In considering the question presented, we must not lose sight of the fact that the purpose of all election laws is to secure to electors the correct expression of their choice in the selection of public servants; and that irregularities on the part of election officers not going to the time or place, or other vital matter of the election, or their omission of acts not declared to be essential to the validity of the election, are to be held directory only in support of the voter's right to have his ballot counted as cast.  *Parvin* v. *Wimberg*, 130

Jones *v.* State, *ex rel.*

Ind. 561, 568, 15 L. R. A. 775; *Powers* v. *Smith*, 111 Mo. 45, 20 S. W. 101, 16 L. R. A. 754; *State* v. *Russell*, 34 Neb. 116, 51 N. W. 465; *Schuler* v. *Hogan*, 168 Ill. 369, 376, 48 N. E. 195; *Allen* v. *Glynn,* 17 Col. 338, 29 Pac. 670, 15 L. R. A. 743; Wigmare's Aust. Ballot, 193; McCrary on Elec. (4th ed.), §225.

And it should also be borne in mind that the simple forms of the old law had so long permitted the employment of atrocious frauds and evasions to defeat the popular will, that to overcome these evils and secure to electors a free and untrammeled vote, and a correct record and return thereof, the elaborate statute, commonly known as the Australian ballot system, was enacted. The statute is reformatory in character and much detail has been observed to thwart evil practices and secure to voters the fair and independent expression of their choice. Its primary purpose is to protect the voter, who must vote the ballot furnished him by the officers or not vote at all, and to secure to the majority of a voting district the right pronouncement of its will; and a construction of its provisions, therefore, in the absence of fraud, actual or suggested, that will effect the disfranchisement of the majority and give the election to the minority, is not to be thought of unless enforced by experience and precedent or commanded by the law itself.

In this case there is no pretense of fraud or unfairness in any step affecting the election, but the appellant insists that the election of the relator was invalid for the following reasons: First, because the certificate of his nomination was not acknowledged by the president and secretary of the convention before some officer authorized to take acknowledgment of deeds, before its delivery to the town clerk, who was acting as the board of election commissioners of the town. Second, because, in constructing the official ballot, the town clerk omitted from the circle at the head of the relator's party ticket the party emblem. Third, because the clerk

further omitted to have printed, in conformity to the statute, on the outer rim of either of the circles, at the head of the two lists of candidates, directions how to vote a straight ticket. Fourth, because the clerk, in making up the official ballot, designated on both tickets the office for which the relator and appellant were candidates, as "Councilman," instead of trustee. Fifth, because the poll clerks failed to write their initials on the outer lower left hand corner of the ballots before delivery to the voters. The facts to which these objections relate have been heretofore stated. Appellant has not attempted to show how these departures from the prescribed modes of presenting candidates and holding the election deprived any legal voters of their right to vote or permitted illegal voters to participate therein, or that any uncertainty in the intentions of voters was produced thereby, and, until this is made to appear, the election of the relator can not be adjudged invalid. *Duncan* v. *Shenk*, 109 Ind. 26; *Parvin* v. *Wimberg*, 130 Ind. 561, 569; *Parker* v. *Orr*, 158 Ill. 609, 41 N. E. 1002, 30 L. R. A. 227; *State* v. *Norris*, 37 Neb. 299, 55 N. W. 1086.

The relator's party convention was regularly assembled. Its nominees for the various offices to be filled by the ensuing election were duly made and correctly stated in the certificate of the president and secretary. Complaint is made of the certificate; not that it misstated or that it inadequately stated the facts, but because the evidence of its verity was not of the class provided by law. The evident purpose of the acknowledgment of the certificate before an officer is to authenticate the paper before the board of election commissioners.

The town clerk, acting as such board, might doubtless have refused to accept the certificate until rendered in due form, but, having accepted it without objection, and as satisfactory to him, the purpose of the law was fulfilled. It enabled him to place upon the official ballot the names of the several candidates that had actually been nominated, and

which of right should have been placed there; and, the correct result having been reached, the form of procedure becomes unimportant. *Simpson* v. *Osborn*, 52 Kan. 328, 34 Pac. 747; *State* v. *Benton*, 13 Mont. 306, 34 Pac. 301.

The absence of the party emblem from the relator's party ticket presents the only grave question raised by the record. We recognize the force of the argument that the object of the party emblem is to guide the illiterate voter in his selection of candidates, but it is not necessary for us to decide, and we do not decide, that its absence may be excused, or that the provision of the statute in relation thereto is directory and not mandatory in all cases. In the case at bar but two political parties participated in the election, and there were but two lists of candidates upon the official ballot. At the head of one ticket or list of candidates was the usual and well known party emblem which could hardly fail of qualifying the illiterate voter to adopt that party's candidates if he preferred them, or to successfully avoid them by choosing the only other. In this instance, therefore, we do not perceive how the voters could have been misled by the absence of the emblem, nor how the appellant could have been injured by the failure of his opponent to have his party candidacy properly advertised upon the official ballot.

The third and fourth objections relate alike to both, tickets, and, if sufficient to invalidate the ballots cast for the relator, it is not apparent why they should not have affected the ballots cast for the appellant in the same way.

The statute requires that the board of election commissioners shall cause to be printed on the outer rim of the circles directions how to vote a straight ticket. This was not done. It ought to have been done. But shall an election fairly conducted and free from fraud be declared null because it is not done?

There is no such office in an incorporated town as "Councilman." The legislative ward office of a town is technic-

ally known as "trustee." The corresponding ward office of a city is technically known as "councilman;" and the inadvertence of the clerk in designating upon the ballot the office for which the relator and appellant were candidates, as councilman instead of trustee, could not have misled any one in choosing between them. The voters knew, they were bound to know, that the only ward office of the town was that of trustee, and that the purpose of the ensuing election, among other things, was the selection of trustees. . The ballots cast were those furnished the voters by the officers whose duty it was to prepare them in due and legal form, and the absence of objection to the form of the ballot, before it has been delivered to the voter, and until after the election has been held, carries the question beyond meritorious complaint.

What has just been said will apply to the fifth objection. The poll clerks wrote their initials upon the outside upper right hand corner of each ballot before it was delivered to the voter. The statute prescribes that they shall be written upon the outer lower left hand corner. But, were the identity and genuineness of the ballot any less certain by the initials appearing upon the upper right hand corner than if they had appeared where the law directs? We think not, and hence should not be permitted to nullify the election. See *Parvin* v. *Wimberg*, 130 Ind. 561, 569.

To hold that all prescribed duties of election officers are mandatory, in the sense that their nonperformance shall vitiate the election, is to engraft upon the law the very powers for mischief it was intended to prevent. If the mistake or inadvertence of the officer shall be fatal to the election, then his intentional wrong may so impress the ballot as to accomplish the defeat of a particular candidate or the disfranchisement of a party. And it is no answer to say that the offending officer may be punished by the criminal laws, for his punishment will not repair the injury done to those affected by his acts.

It is the duty of the courts to uphold the law by sustaining elections thereunder that have resulted in a full and fair expression of the public will, and, from the current of authority, the following may be stated as the approved rule: All provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election, all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void. *Parvin* v. *Wimberg,* 130 Ind. 561; *Boyd* v. *Mills,* 53 Kan. 594, 608, 37 Pac. 16, 25 L. R. A. 486; *Miller* v. *Pennoyer,* 23 Ore. 364, 31 Pac. 830; *Stackpole* v. *Hallahan,* 16 Mont. 40, 40 Pac. 80, 28 L. R. A. 502; *Blankinship* v. *Israel,* 132 Ill. 514, 24 N. E. 615; *Adsit* v. *Osmun,* 84 Mich. 420, 18 N. W. 31, 11 L. R. A. 534; McCrary on Elect. §§27, 28, 29; Endlich Int. of Stat. §433.

In the Montana case it was held that the statute prescribing certain facts to be stated in the certificate of nomination is not to be held mandatory in a case where the nomination has been duly made, the certificate filed, the name placed upon the ballot, the candidate voted for and elected by a plurality of all the legal votes cast, and when the effect to give a mandatory construction to such provision would be to disfranchise a plurality of the voters of the district.

A statute providing that, to entitle a political party to make nominations by a convention, it must have polled at the next preceding election two per cent. of the vote of the county, is directory, and not mandatory after the election. *Schuler* v. *Hogan,* 168 Ill. 369.

If one of the judges of election proceeds throughout his duties without taking the oath prescribed by law, or if one of the superintendents of election, after the polls are closed

but before the votes are counted, leaves the precinct, and the other two count the votes and sign the certificate, the returns thus certified should not be excluded from the consolidated vote of the county, because not signed by all three of the superintendents as provided by law, nor should they be excluded because one of the superintendents left before the count. *Tanner* v. *Deen*, (Ga.) 33 S. E. 832.

The statute of Pennsylvania provides that the name of any candidate shall not appear more than once upon the ballot. Gunster was severally nominated by the Democratic and Republican party for the office of judge and his name placed by the supervisors of election on both tickets upon the official ballot for that office, and it was held that "after the qualified electors had declared their choice by the use of the only ballots they could have used" the election of Gunster was not thereby invalidated. *Commonwealth* v. *McCormack*, 8 Pa. Dist. R. 117.

It was held in *Boyd* v. *Mills*, 53 Kan. 594, that the mistaken use of colored sample ballots by all the voters of a precinct did not vitiate the election.

Appellant assigns fifteen reasons why a new trial should have been granted him. They relate to the admission in evidence of a list of those who voted at the election, the certificate of the relator's nomination and of appellant's nomination, testimony by the relator that he was a candidate before the election, the paper bag which contained the uncounted ballots, the ballots cast at the election upon which there was no party emblem, nor printed directions how to vote a straight ticket, and no indorsement by the poll clerks.

The certificate of nomination was valid and properly admitted in evidence. The ballots were sufficiently identified and not incompetent for omissions in construction, for reasons heretofore given; and there appears no available error in overruling the motion for a new trial.

The judgment should be affirmed. Judgment affirmed.