## EVISTON, AUDITOR, *v.* STATE OF INDIANA, EX REL. HARTER.

[No. 23,175.   Filed November 2, 1916.]

1.   ELECTIONS.—*Registration of Voters.—Duty of Auditor.—Statute.—*Under the law governing the registration of voters as amended by the Act of 1915 (Acts 1915 p. 530 *et. seq.*) it is the duty of the county auditor, previous to the issuance of the notice of the time and place of the session of the registration boards, to decide whether a complete or supplemental registration of voters is necessary.   p. 310.

2.  MANDAMUS.—*Registration of Voters.—Decision of County Auditor* —The decision of a county auditor, following the interpretation made by a committee appointed by the Governor to construe the voters registration law as amended by the Act of 1915 (Acts 1915 p. 530 *et seq.*) to provide for a permanent registration of voters, that, because the precinct poll books had been destroyed, a complete new registration of all voters was necessary, was not so palpably wrong as to warrant interference therewith by a writ of mandamus to compel him to place on the registration lists the name of one whose name had been on the destroyed poll books, but who failed to register during the registration board's session, especially where the remedy of mandamus was first invoked after the registration period had ended.    p. 310.

3.  MANDAMUS.—*New Registration of Voters.—Necessity for.—Decision of County Auditor.*—As the voters registration law as amended by the Act of 1915 (Acts 1915 p. 530 *et seq.*) invests the county auditor with the primary duty of determining the necessity of a complete new registration of voters, his determination that such general registration was necessary, even though erroneous, if acted on in good faith by the proper election officers, cannot be assailed by mandate after the registration period has ended to compel him to place on the registration lists the name of a voter, registered at the preceding general election, the poll books for which had been destroyed, who failed to register at the session of the registration board.    p. 311.

4.  ELECTIONS.—*Registration of Voters.—Attack on Decision of County Auditor.*—Where a county auditor, acting under the authority given him by the voters registration law, determines that a complete registration of voters in a precinct is unnecessary, notwithstanding the destruction of the poll books and a supplemental registration is held, no voter of the precinct can be heard to complain, after the end of the registration period, that a complete registration was necessary.    p. 311.

5.  ELECTION.—*Registration of Voters.—Failure of Voter to Register.—Effect.*—Where a county auditor determines that, because the poll books of the preceding general election had been destroyed, a complete registration of voters is necessary, a voter, registered and voting at the preceding general election, who fails to register at such complete registration is not entitled to have his name placed on the registration records after the end of the registration period.    p. 311.

From Huntington Circuit Court; *W. D. Hamer,* Special Judge.

Action by the State of Indiana, on the relation of Heber B. Harter, against Ovid E. Eviston, auditor

of Huntington county. From a judgment for relator, the defendant appeals. *Reversed.*

*Cline & Cline* and *C. W. Watkins,* for appellant. *C. K. Lucas, Edward M. White, Alexander G. Cavins, William H. Thompson, R. H. Sullivan* and *W. W. Spencer,* for appellee.

MORRIS, J.—Mandamus action by appellee against appellant. The complaint, among other things, alleges that relator is, and continuously has been for more than two years, a bona fide resident of precinct numbered three, in Huntington township, in Huntington county; that in 1914 he duly registered for the general election of that year, and voted at such election; that his name does not appear on the 1916 registration books of said precinct; that on October 11, 1916, he appeared before appellant auditor and filed his own affidavit to the effect that he registered and voted in the precinct in 1914, and also filed the affidavits of two freeholders of the precinct to the effect that he had resided continuously in the precinct during the past two years; that he thereupon demanded of appellant that his name be entered on the registration books of the precinct; that the demand was refused. Appellant filed an answer, which, among other things, avers that the poll books of said precinct, of the 1914 election, were destroyed previous to September 24, 1916, by the clerk of the circuit court; and that there was no other official list of the persons who voted at the 1914 election in the precinct; that fifteen days previous to October 9, 1916, he determined and decided that, because of such facts, the registration records of the precinct were unfit to be used in the 1916 registration, and that it was necessary to have a complete registration in the precinct, on October 9, 1916, of

all the voters thereof; that pursuant to such determination, statutory notices were published and posted of a complete registration; that a complete registration was had on October 9, and relator did not register during the session of the board, either personally or by affidavit. The trial court sustained a demurrer to the answer, and appellant declined to further plead.

Our registration law was amended in 1915 so as to provide for a permanent registration of voters. Acts 1915 p. 530. As applicable to the election of 1916, it contemplated the use of the 1914 registration books as a basis, and the elimination therefrom of the names of those not entitled to vote in 1916, and adding thereto, by supplemental registration, the names of those acquiring the right to vote by moving into the precinct, and of those reaching the age of twenty-one years, etc.

Section 1 of the amended act contains this proviso: "*Provided*, That in the event that the registration books of any precinct shall have been destroyed, or mutilated, or are inaccessible, or are for any other reasonable cause unfit to be used, there shall be a registration of all voters resident within such precinct, and every voter who is a resident of any such precinct shall be required to appear in person at a session of the registration board and announce his name, and present his application and be duly registered  *  *  *  at some session of the registration board, prior to the general election".

The act requires that a voter who duly registered in 1914, but failed to vote at the election of that year, may not vote now without again registering. Section 8 of the act, *supra*, contains this provision: "The names of the registered voters who failed to exercise the right of suffrage at the last general

election next preceding shall be determined by comparing the registration books used for the identification of voters and the books kept by the poll clerks at the last general election next preceding." Section 6 of the act required the county Auditor to give ten days notice of the time and place of the session of registration · boards, and provides for two kinds of notice, one where the registration is supplemental and the other where complete. The statutory form of the latter is as follows: "Every voter of the precinct is required to register at the session of the board, unless prevented by sickness of himself, or his unavoidable absence from the county, or by reason of his being quarantined. If he fails to so register, he shall have no right to vote at the November election."

Previous to August 1, 1916, the Governor of this State appointed three experienced lawyers to construe the registration law as amended in 1915. The chairman of the Democratic, Republican and Progressive State Central Committees each nominated one of the committee afterward selected by the Governor. This committee reported to the Governor, and its report was concurred in by the three state chairmen, and published under the authority of the State Board of Election Commissioners. Similar committees have been heretofore appointed, and their interpretations of new election laws have been carefully considered by the courts. *Parvin* v. *Wimberg* (1892), 130 Ind. 561, 30 N. E. 790, 15 L. R. A. 775, 30 Am. St. 254. The report of this committee (1916) shows that, as it construed our registration law, a complete new registration of all voters was required where the poll books had been destroyed, because, as it construed the law, there would otherwise be no legal way to purge the registration books of the names of persons who

registered in 1914, but did not vote at the subsequent election. It appears that this construction of the law was adopted by appellant, and he issued the statutory notice for a complete new registration. Such registration was held on October 9, and relator failed to register, and failed to make any objection to the method pursued until after the legal adjournment of the board. On October 11, when the registration period had ended, he sought to have his name entered on the registration books on a theory inconsistent with that adopted by the auditor and acted on by the registration board and voters.

We do not deem it necessary to discuss at length the proper construction of the law. It was the duty of the auditor, previous to the issuance of notice, to decide whether complete or supplemental registration was necessary. He made a decision which relator claims was erroneous and not binding on him, but relator stood by, notwithstanding the notices and the ending of the registration board's session, before he asserted the contrary theory of the law.

In *Parvin* v. *Wimberg, supra,* an election contest case, this court referred to the pre-election report of a committee on the interpretation of the then new Australian ballot law of 1889, and said: "This construction having been accepted and acted upon by the officers whose duty it was to administer the law, the courts should not now ignore it, unless it is palpably wrong." We can not say that the auditor's decision, following the interpretation of the committee, was so palpably wrong as to warrant interference therewith by the extraordinary process of mandate, especially where first invoked after the registration period has ended.

Indeed, we are of the opinion that as the law invests the county auditor with the primary duty of determining the question of the necessity of a complete new registration, such determination, even though erroneous, if acted on in good faith by the proper election officers can not be assailed by mandate after the registration period has ended. And in this case,· had the county auditor determined that a complete registration was unnecessary, notwithstanding the destruction of the poll books, and had a supplemental registration only been held, we are of the opinion that, after the end of the registration period, no voter of the precinct could have been heard in a claim that complete registration was necessary. In every precinct of the State there was a registration in October, the character of which, whether supplemental or complete, was indicated by the auditor's notice. Officers and voters acted accordingly and, after October 10, there could have been no further registration, and the voters' rights in the several precincts must be viewed in the light of the character of registration, whether complete or supplemental, that was actually held. Otherwise hopeless confusion would result.

We are of the opinion, under the facts pleaded, that relator, having failed to register where complete registration was required by the auditor's notice, is not entitled to have his name placed on the registration records. Judgment reversed, with instructions to overrule the demurrer to appellant's answer.

Spencer, J., not voting.

NOTE.—Reported in 114 N. E. 1. Effect of loss or destruction of registry list on right to vote, note, 28 L. R. A. (N. S.) 989; See under (3) 26 Cyc 271, 272; 98 Am. St. 865, 869, 886.