**Ken E. HUGHES, Appellant–Defendant Cross–Plaintiff,**

v.

**Steve BROOKS, Bonnie Wells, Jerry W. Humphrey, John A. Chaddock and B.G. Aurand, Appellees–Plaintiffs.**

No. 87A05–9203–CV–95.

Court of Appeals of Indiana, Fifth District.

Aug. 26, 1992.

Jack N. Vanstone, Evansville, for appellant.

R. Thomas Bodkin, Bamberger Foreman Oswald & Hahn, Evansville, S. Anthony Long, Phillips and Long, Boonville, for appellees.

SHARPNACK, Judge.

Ken Hughes and Jeffrey Humphrey appeal the trial court's judgment in a recount and election contest affirming the recount commission's ("Commission") results. We affirm the trial court.

Hughes argues that the trial court erred by not counting a vote for him on a ballot which had not been initialed by the poll clerks. Hughes' opponent, Jerry Humphrey, argues that the trial court erred by not counting a vote allegedly cast for him on a ballot which contained punches that did not line up with any candidate for the election in any of the cities of Warrick County.

On November 12, 1991, Jerry Humphrey, among others, petitioned the Warrick Superior Court for a recount of the votes cast in the Newburgh Town Council election held on November 5. On December 18, the court appointed three recount commissioners, who, on December 19, convened and manually recounted all of the ballots cast in the relevant precincts. The results of the recount were that Humphrey and Hughes had each received 372 votes. The next day, Hughes appealed the Commission's determination, alleging that the Commission had failed to count all of the votes cast in the election. In particular, Hughes argued that the Commission had erroneously excluded one vote for him solely because the poll clerks had failed to initial the back of the ballot. On December 27, Humphrey responded by filing his own appeal of the Commission's determination, alleging that the Commission had erroneously excluded one vote for him solely because the ballot had been inserted into the voting machine backwards. Both ballots had been excluded by the unanimous vote of the Commission. Following a bench trial, the court affirmed the results reached by the Commission. This appeal ensued.

Since the original ballots are properly within the transcript in this case, it is within our jurisdiction to weigh the evidence and to order such a judgment or decree as may be proper. *Lorch v. Lohmeyer* (1969), 252 Ind. 182, 247 N.E.2d 61.

The statutes relevant to this appeal read, in pertinent part, as follows:

*Ind. Code § 3–11–13–28:*

"The two (2) poll clerks of each precinct shall place their initials in ink on the back of each ballot card at the time the card is issued to a voter. The initials must be in the poll clerks' ordinary handwriting or printing and without a distinguishing mark of any kind. A ballot card is not valid unless it is initialed by both poll clerks."

*I.C. § 3–12–1–1:*

"Subject to sections 5, 6, 8, 9, 9.5, and 13 of this chapter, the primary factor to be considered in determining a voter's choice on a ballot is the intent of the voter. If the voter's intent can be determined on the ballot or on part of the

ballot, the vote shall be counted for the affected candidate or candidates or on the public question. However, if it is impossible to determine a voter's choice of candidates on a part of a ballot or vote on a public question, then the voter's vote concerning those candidates or public questions may not be counted."

I.C. 3–12–1–2:

"(a) This section does not apply to absentee ballots.

(b) The whole ballot may not be counted, subject to section 12 of this chapter, if the ballot is not endorsed with the initials of the poll clerks."

I.C. § 3–12–1–12:

"(a) This section applies to votes cast by any method.

(b) Except as provided in section 13 of this chapter, a ballot that has been marked and cast by a voter in compliance with this title but may otherwise not be counted solely as the result of the act or failure to act of an election officer may nevertheless be counted in a proceeding under IC 3–12–6 [recount procedures], IC 3–12–8 [contest of nomination for or election to local or school board office] or IC 3–12–11 [recount procedures for federal, state, and legislative offices], unless evidence of fraud, tampering, or misconduct affecting the integrity of the ballot is presented by a party to the proceeding.

(c) The act or failure to act by an election officer is not by itself evidence of fraud, tampering, or misconduct affecting the integrity of the ballot."

I.C. 3–12–1–13:

"(a) This section applies only to absentee ballots.

(b) The whole ballot may not be counted unless the ballot is endorsed with the initials of:

(1) the two (2) members of the absentee voter board in the office of the circuit court clerk under IC 3–11–4–19 or IC 3–11–10–26; or

(2) the two (2) appointed members of the county election board (or their designated representatives) under IC 3–11–4–19."

■ We address first whether the vote cast on the ballot marked as Exhibit A, which has not been initialed by the poll clerks, should be excluded. According to I.C. § 3–12–1–2, a ballot that is not an absentee ballot and that has not been endorsed with the initials of the poll clerks may not be counted except as set out in I.C. § 3–12–1–12. As set out in I.C. § 3–12–1–12, a ballot that has been properly marked and cast by a voter, which would otherwise not be counted solely because of an election officer's failure to act, may nevertheless be counted in a recount procedure unless a party to the proceeding presents evidence of fraud, tampering, or misconduct affecting the integrity of the ballot. As these statutes set out, Hughes first had to prove that the ballot in question was not an absentee ballot in order to make it eligible for counting pursuant to I.C. § 3–12–1–12. Because Hughes failed to make such a showing, the vote on the uninitialed ballot may not be counted.

■ Next we address whether the vote cast on the ballot marked as Exhibit B, which contained punches that did not line up with any candidate for the election in any of the cities of Warrick County, should be excluded. Our supreme court faced a similar issue when it considered an election contest in *Parvin v. Wimberg* (1892), 130 Ind. 561, 30 N.E. 790. The election law at the time *Parvin* was decided stated that, after receiving his ballot from the clerk, the voter should go alone into a booth and indicate the candidates for whom he desired to vote by stamping the square immediately preceding their names. *Id.* 30 N.E. at 791. At trial, one of the candidates offered into evidence a number of ballots where none of the squares had been touched by the stamp and the trial court counted some of these ballots in reaching its decision. In reversing the trial court on this issue, the supreme court stated,

"The doctrine that it is within the power of the legislature to prescribe the manner of holding general elections, and to prescribe the mode in which the electors shall express their choice, is too familiar to call for the citation of authority. In this instance it has declared that the mode by which the elector shall express his choice shall be by stamping certain designated squares on the ballot. There is nothing unreasonable in the require-

ment, and it is simple and easily under-stood. Furthermore, if he is illiterate or is in doubt, the law makes ample provision for his aid. If he does not choose to indicate his choice in the manner prescribed by law, he cannot complain if his ballot is not counted.... In order that the elector may have his ballot counted at all, he must touch some one of the squares with the stamp. He can indicate his choice in no other manner, for this is the only mode prescribed by the law. He cannot stamp his ballot elsewhere, and leave the election board to guess at his intention."

*Id.* at 791–2.

Humphrey directs us to I.C. § 3–12–1–1 and argues that the primary factor to consider in determining a voter's choice on a ballot is the intent of the voter. According to Humphrey, this ballot should be counted as a vote for him because, if we rotate the ballot a hundred and eighty degrees and lay it on top of a properly voted ballot, (Exhibit C), we can discern with certainty that the intent of the voter was to vote for him. We decline to do so.

In addition to what Humphrey cites, I.C. § 3–12–1–1 also states that, if it is impossible to determine a voter's choice of candidates on a part of the ballot, the voter's vote concerning those candidates may not be counted. The evidence indicates, and Humphrey agrees, that the punches on the ballot at issue here did not line up with any candidate for the election in any of the cities of Warrick County. (Appellee's Brief, p. 10.) The mode by which the voter was to express his choice for a candidate in this election was by inserting the ballot into the machine and punching holes with a stylus next to his choices. (Record, p. 89.) As in *Parvin*, there is nothing unreasonable in this requirement, and it is simple and easily understood. If the voter who cast the ballot at issue here chose not to indicate his choice in the manner prescribed by law, neither he nor a disappointed candidate can complain if the ballot is not counted. In order for the voter here to have this ballot counted at all, he must have punched holes next to the name of a candidate. A voter cannot punch holes elsewhere on the ballot and leave those counting the votes to guess at his intention. Because it is impos-

sible to determine the voter's intent from this ballot, the voter's vote here may not be counted.

The trial court was correct in its decision not to count Exhibits A and B.

AFFIRMED.

GARRARD and RUCKER, JJ., concur.