THE PEOPLE, *ex rel.* John R. Eastman, *vs.* SEAMAN.

A ballot cast for a candidate for office in which only the initial letters of his christian names are inserted—as J. R. Eastman, for John R. Eastman—is a legal ballot for the person designated by such initials, provided it be found by verdict that the elector so intended.

Upon an information to try the right to an office, it is competent to look beyond the canvass for the purpose of giving effect to such a ballot.

And where the justices of the peace of a town had made an appointment of supervisor, on the supposition that there had been a failure to elect one at the preceding town meeting, and on the trial of an information in the nature of a *quo warranto* against the person so appointed it appeared that the presiding officers of the town meeting had declared at the close of their canvass that there was a *tie vote* between the two candidates for supervisor; *held* that it was competent for the people to prove on such trial that a vote had been given, intended for the relator, in which only the initial letters of his name were inserted, and which if allowed would have elected him.

*Held also*, that the determination of the officers of the town meeting, and also the appointment by the justices might be drawn in question on the trial of an information against the incumbent, by showing that a choice had actually been made at the town meeting.

But where a ballot cast at a town meeting had upon it the names of *two* persons for the office of supervisor; *held* that it was incompetent on the trial of an information prosecuted to determine the title to the office to show that the elector who deposited the ballot intended to vote for one of the persons named therein,

INFORMATION in the nature of a *quo warranto* to determine the title of the defendant to the office of supervisor of the town of Pawling, in the county of Dutchess, tried at the Dutchess circuit in March, 1844, before RUGGLES, late Cir. J. The jury found a special verdict, in which it was stated that at the annual town meeting for that town held on the 4th day of April, 1843, the presiding officers declared that the votes were equally divided between the defendant and the relator, each having received 155 votes. The certificate of the presiding officers, filed according to law, stated the election of the other town officers, but was silent respecting any choice of or attempt to choose a supervisor. The verdict also stated that on the Saturday next succeeding the town meeting four justices of the peace of Pawling, by an instrument under their hands and seals, reciting that there had been a failure to elect a supervisor by the electors at the town meeting, appointed the defendant to that office for the ensuing year ; the defendant took the oath of office, and the appointment and oath were duly filed ; that at the aforesaid town meeting one vote was given for *J. R. Eastman* for supervisor, *which was intended by the elector who deposited it for the relator,* but that it was not counted in his favor, and that had it been so counted he would have been elected.

A bill of exceptions was also taken upon the trial, by which it appears that the defendant insisted that the certificate of the presiding officers of the town meeting, and the instrument of appointment executed by the justices were conclusive in the defendant's favor, and could not be questioned ; and also that the vote for J. R. Eastman could not be taken into consideration in favor of the defendant, because the ballot had not been returned as required by law, and moreover that it ought to have been rejected, as had been done, as it was not a legal vote for the relator. The judge decided against these positions, and received the evidence touching the vote for J. R. Eastman. It was also stated in the bill of exceptions, that it appeared that a ballot was found in the box, which had on it the names both of the relator and the defendant, which was rejected by the canvassers. The defendant offered to show by a witness that

The People *v.* Seaman.

an elector showed this ballot to him (the witness) with the name of the relator upon it, and requested the witness to alter it by substituting the name of the defendant; that the witness did thereupon insert the defendant's name, but neglected to erase that of the relator thereupon. The judge excluded this evidence, and the defendant excepted to the several decisions made against him.

*A. L. Jordan,* (attorney general,) for the people.

*C. Swan,* for the defendant.

*By the Court,* WHITTLESEY, J. The special verdict finds · that the ballot given for J. R. Eastman was intended for the relator. This fact brings this case within the doctrine established in *The People* v. *Ferguson,* (8 *Cowen's Rep.* 102,) and several subsequent cases, and indicates clearly that the relator was legally entitled to the office of supervisor. It is held in all the cases that in a proceeding of this kind instituted to try the right of office directly, it is competent to go behind the certificates, which would otherwise be conclusive, to ascertain the real facts of the case. Such certificates were held not to be conclusive in *The People* v. *Van Slyck,* (4 *Cowen,* 297,) *The People* v. *Ferguson,* (*supra,*) and *The People* v. *Vail,* (2 *Wendell,* 12,) in which proceedings were instituted directly to try the right. In the last case Bronson J. says: "Such proceeding reaches beyond those evidences of title which are conclusive for every other purpose, and inquires into and ascertains the abstract question of right." The circuit judge was therefore right in holding that the certificates were not conclusive in favor of the defendant, and in admitting evidence as to the ballot with the name J. R. Eastman upon it.

The defendant contends that the ballot, J. R. Eastman, being an imperfect one, should have been preserved and re turned; and because it was not properly returned that no notice can be taken of it. The statute in relation to the election of town officers provides that " the like proceedings shall be had as to ballots folded together and as to differences in num-

ber, as are prescribed in the fourth title of the sixth chapter." (1 *R. S.* 344, § 8.) The title thus referred to provides for ballots folded together, and for differences in number between the bal lots and the poll list; and the fifty-second section (1 *R. S.* 139, makes it the duty of inspectors of election to preserve a true copy of all ballots rejected as defective, with the originals attached, and to deliver the same to the town clerk to be filed in his office. The chapter in relation to elections of town officers hardly embraces and embodies this fifty-second section in the chapter relative to elections other than for militia and town officers; but if it does, it only shows that the presiding officers have neglected their duty in not returning the defective ballot, and the relator should not be injured by such neglect. The ruling of the circuit judge was right in relation to this matter. He also properly rejected the proof which was offered in regard to the ballot which had upon it the names of both the relator and the defendant. The intention of the elector cannot be thus inquired into when it is opposed or hostile to the paper ballot which he has deposited in the ballot box. We might with the same propriety permit it to be proved that he intended to vote for one man when his ballot was cast for another; a species of proof not to be tolerated.

It is further urged on behalf of the defendant that the act of the justices in appointing the defendant supervisor was a judi- cial one, and cannot be inquired into or impeached in any collateral way, and can only be reviewed by *certiorari.*

It was held in *Wood* v. *Peake,* (8 *John. Rep.* 69,) sanctioned by *Wildy* v. *Washburn,* (16 *id.* 49,) that such appointments by justices were judicial acts, which were not to be questioned in any collateral action between individuals. This is sound doctrine, and is equally applicable to the decision of a board of canvassers declaring the results of an election to office. The decision of the canvassers cannot be called in question collaterally, but only in a proceeding instituted directly to try the right to the office. In *Wood* v. *Peake* it is indeed said that the appointment remains valid until it be set aside or quashed upon *certiorari.* But this only determines that the

The People *v.* Seaman.

appointment may be questioned by *certiorari*, and not that it may not be questioned in other forms of proceeding instituted directly for the purpose of questioning it. While proceedings may be had by *certiorari* it does not follow that no proceedings can be had in any other mode. Proceedings by *certiorari* are not such as could do complete justice in a case like this, while an information in the nature of a *quo warranto* is specially adapted to suit such cases, and is peculiarly appropriate to try the right to office, and to give the full measure of redress in case of success. The justices had no jurisdiction to appoint a supervisor unless the town neglected to choose one at the annual town meeting. (1 *R. S.* 347, § 31.) If there was a tie between the candidates and the meeting broke up without a further vote, there was undoubtedly a neglect to choose. To ascertain how the vote stood the presiding officers were to canvass the votes, make a statement of the result, to be entered at length in the minutes and to be publicly read to the meeting. (*Id.* 344, § 9.) The result was canvassed and stated, but was not entered in the minutes as required. The entry was silent as to the vote upon supervisor. And upon this silence the justices are presumed to have acted. If in point of fact this entry was false, and there had been a supervisor elected, the justices would have had no jurisdiction to appoint one. The certificate or entry of the presiding officers is the basis of the judicial action of the justices, as the certificate of a board of canvassers is the evidence of title to office. Such certificate may be questioned in the proper proceeding in the latter case, and I do not see why it may not in the former, when the inquiry is whether the justices had authority to make an appointment.

. This proceeding is instituted to try the right of office. It is an appropriate proceeding for that purpose. And in it we can look beyond evidences of title to office which are conclusive for every other purpose, and determine whose is really the abstract right. We can look behind the certificate to see whether the canvass of the presiding officers was correct—whether they allowed the proper votes—whether they determined correctly

or otherwise that two of the candidates had an equal number of votes—whether there was a neglect to choose at the town meeting, so as to give the justices jurisdiction to appoint. Going thus behind the certificates, the special verdict informs us that there was no neglect to choose; consequently that there was no jurisdiction in the justices to appoint; and that the relator was lawfully elected supervisor.

The year for which this election was made has passed, and there can be no judgment of *ouster*, and the relator cannot be put into office, but he is still entitled to judgment and to his costs. (*The People* v. *Loomis*, 8 *Wend.* 396.)

Judgment for the plaintiff.