NEW YORK PRACTICE REPORTS. 141

The People *ex rel.* Hatzel agt. Board of Supervisors.

## SUPREME COURT.

THE PEOPLE *ex rel.* HATZEL agt. THE BOARD OF SUPERVISORS.

*Election law — right of the board of aldermen to judge of the election of its own members — when writ of mandamus to compel county canvassers to send back returns or statement to ward inspectors for correction should not be allowed.*

The board of county canvassers are only to send back the returns to the town or ward inspectors, when it shall clearly appear to them that certain omissions have been made, or that any mistakes, which are merely clerical, exist.

Where the relator, who asks for a *mandamus* to compel the county canvassers to send back the returns to the ward inspectors for correction, in his affidavit alleges matters which, assuming them to be true, show that there is no clerical error in the case, but that there has been a false and fraudulent alteration of the returns:

*Held,* that if the returns have been fraudulently altered the inspectors or others who have made such alterations are criminally liable for their wrongful acts; but the question whether such fraud has been committed cannot be properly tried in a proceeding to compel the canvassing of the votes.

In an action in the nature of a *quo warranto* the court can go behind the certificates of inspectors and canvassers, and the voter can be examined as a witness to prove for whom he cast his ballot. But in a proceeding to compel the canvassing of the votes, where the officers to whom the writ is to be directed are merely ministerial officers, deriving their powers solely from the statutes, and having no power to examine witnesses to enable them to get at the real truth, the granting of the writ would be useless and nugatory.

Although inspectors of election are guilty of an irregularity in not complying with the law which makes it the duty of inspectors "to securely paste or attach to each statement of the canvass one ballot of each kind found to have been given for the officers to be chosen at the election," &c., &c., as provided in section 54 of the act of 1872 (*chapter* 675), such an irregularity cannot be availed of by one who does not show himself to have been injured thereby.

To entitle a party to a writ of *mandamus* two things must appear: First, that he has a legal right to have something done by the party to whom he seeks to have the writ directed, and which has not been done; and, secondly, that he has no specific legal remedy to which he can resort to compel the performance of that duty.

Accordingly, *held,* that as the relator will have an opportunity of contesting the right of his opponent before the board of aldermen, and by the charter such board is made the judge of the election returns and qualifications of its own members, subject, however, to the review of any court of competent jurisdiction, thus giving the relator, if aggrieved, a remedy at law, a *mandamus* will not lie.

*Held,* further, that as this application is made to the court within twenty-four hours of the time fixed by the board of canvassers for their final adjournment, and to issue the writ might work great injustice and cause increased expense, the elementary rule should be followed, that the writ should not be issued where the party has not a perfectly clear legal right to demand that for which he asks.

*Special Term, November,* 1878.

THIS is a motion for a *mandamus* to compel the board of supervisors, acting as a board of county canvassers, to send back to the ward inspectors the returns, or statements, for correction and a recanvass.

*L. C. Waehner,* for plaintiff.

*W. C. Whitney,* for defendant

LAWRENCE, *J.*— The motion for a *mandamus* should be denied, for these reasons:

First. I do not understand it to be alleged by the relator that his name appeared upon any or either of the ballots which he alleges that the inspectors of the eleventh election district of the eighth assembly district, unlawfully neglected to paste or attach to the statement of the canvass, in said election district. In the absence of such an averment, it is impossible to see how the relator has been injured by the omission of the inspectors to comply with the provisions of section 54 of the election law. It was the duty of the inspectors, under that section, to securely paste or attach to each statement of the canvass one ballot of each kind found to have been given for the officers to be chosen at the election, and to have stated " in words at full length immediately opposite such bal- " lot, and written partly on such ballot and partly on the paper

" to which it shall be pasted or attached, the whole number of " all the ballots that were received which correspond with the " one so pasted or attached, so that one of each kind of the " ballots received at such election for the officers then to be " chosen, shall be pasted or attached to such statement," &c. (*See act of* 1872, *chap.* 675).

The inspectors were, therefore, guilty of an irregularity in not complying with the law in this respect, but such an irregularity cannot be availed of by one who does not show himself to have been injured thereby, and this the relator fails to do. He simply alleges the omission of the inspectors to comply with the provision of the statute, and then proceeds to set out the form and language of the ballot, which the inspectors actually attached to their return, which ballot bears the name of George Hall, who was the principal opponent of the relator, as appears by the affidavit before me, and also the name of the relator.

The affidavit then goes on to state that four other persons, to wit, Joseph P. Strack, Bernard Kenney, Julius Hoffman and Louis Hock were also candidates at the election in said district for the office of alderman, and avers that Strack received seventy votes, Kenney eighty-five votes, and Hoffman and Hock four votes each. No elector, under the existing law, can vote for more than two aldermen in each of the senate districts, and as the relator does not allege that his name was on any of the ballots which were cast for either of the other four candidates, and as his name does appear on that cast for George Hall, the presumption must be, in the absence of an averment to the contrary, that such ballot was the only one which bore the name of the relator.

Second. The law provides that, if upon proceeding to canvass the votes, it shall clearly appear to the canvassers that in any statement, produced to them, certain matters are omitted in such statement which should have been inserted, or that any mistakes which are clerical merely exist, they shall cause the said statement to be sent by one of their number (who

they shall depute for that purpose) to the town or ward inspectors, and town or ward canvassers from whom they were received to have the same corrected, and the said canvasser so deputed shall immediately proceed and give notice to the town or ward inspectors and canvassers, whose duty it shall be forthwith to assemble together and make such correction as the facts of the case require, but such town or ward inspectors and canvassers shall not, at such meeting, change or alter any decision before made by them, but shall only cause their canvass to be correctly stated, and the board of county canvassers are authorized to adjourn from day to day, for the purpose of obtaining and receiving such statement, such adjournment not to extend beyond three days (1 *R. S., pp.* 134, 135, *sec.* 15, *Edmond's ed.*).

The relator relies upon this section as entitling him to the writ which he asks the court to grant in this case, but I think that he fails to bring himself within its provisions :

1st. The canvassers are only to send back the returns, when it shall clearly appear to them that certain omissions have been made, or that any mistakes, which are merely clerical, exist.

I must assume in this proceeding, that it does not clearly appear from the return of the inspectors to the canvassers that any mistakes, which are merely clerical, exist, because it is shown by the relator's affidavit that the canvassers, by a vote of fourteen to one, out of fifteen members present, resolved to canvass the statement, and as to the omission to attach the other ballots to the return, as I have above shown, the relator cannot ask for a *mandamus*, because he fails to aver that his name was on either of those ballots.

2d. There is nothing before me showing that there is any clerical error in the return, within the meaning of the statute, as I construe it. The relator alleges that, on the night of the election, it was announced by the inspectors that ninety-three votes had, in the district in question, been cast for the relator, and that Hall had received 130 votes, and that he, the relator, was so informed by a United States inspector of elections

who attended at the poll, and that a statement to that effect was delivered to a patrolman on duty at the polling place, which statement is on file with the chief of the bureau of elections. The return made by the inspectors to the canvassers shows that Hall received 200 votes and the relator twenty-three.

Assuming this to be true there is no clerical error in the case, but there has been a false and fraudulent alteration of the returns. And although it is not alleged as the ground for the relator's application distinctly, I take this to be the real charge which he makes, because, in another part of his affidavit, he alleges that said statements appear, upon their face, to have been altered and bear evident erasures, but still indicate, as an inspection will show, that the votes originally returned for Hall were 130, and for the relator ninety-three in number. In an action in the nature of a *quo warranto* the court can go behind the certificates of inspectors and canvassers, and the voter can be examined as a witness to prove for whom he cast the ballot (*People* agt. *Cook*, 8 *N. Y.*, 67; *People* agt. *Pease*, 27 *N. Y.*, 45; *People* agt. *Vail*, 20 *Wend.*, 12; *People* agt. *Seaman*, 5 *Denio*, 409).

But in a proceeding of this nature where the officers to whom this writ is to be directed are merely ministerial officers, deriving their powers solely from the statute, and having no power to examine witnesses to enable them to get at the real truth, the granting of the writ would appear to be useless and nugatory. If the returns have been fraudulently altered the inspectors, or others who have made such alterations, are criminally liable for their wrongful acts, but the question whether such fraud has been committed cannot be properly tried in a proceeding to compel the canvassing of the votes.

3d. As the fifty-seventh section of the election law requires that within twenty-four hours after the several statements have been subscribed they shall be delivered by the inspectors to the clerk of the board of supervisors, the county clerk and chief of the bureau of elections; and as the fifty-ninth section provides that the remaining ballots not pasted or attached to

said statements shall be destroyed by the inspectors, in the absence of any proof to the contrary, the presumption arises that the ballots referred to in the relator's affidavit have been destroyed, and that it would be impossible for the inspectors or canvassers to comply with the relator's demand, even if the writ should be granted.

Again, the relator does not assert in his affidavit that the formal statements required by said fifty-seventh section of the statute to be filed with the county clerk and the chief of the bureau of elections differ from the statement delivered to the board of supervisors by the inspectors. The statement alleged to have been delivered to the patrolman, and by him filed with or delivered to the election bureau, is nowhere alleged to be the statement required to be delivered by the inspectors to the chief of such bureau.

Third. The relator will have an opportunity of contesting the right of his opponent before the newly-elected board of aldermen. By the charter the board is made the judge of the election returns and qualifications of its own members, subject, however, to the review of any court of competent jurisdiction.

In such a proceeding the facts can be inquired into and determined (*Charter of* 1873, *sec.* 6, *sub.* 4; *Laws* 1873, *ch.* 335).

Fourth. The action of the board of aldermen under the provision of the charter just adverted to, is subject to the review of any court of competent jurisdiction. This gives the relator, if aggrieved, a remedy at law, and in such a case *mandamus* will not lie (*People* agt. *Thomson,* 25 *Barb.,* 73; *People* agt. *Supervisors Greene,* 12 *Barb.,* 217; *People* agt. *Hawkins,* 46 *N. Y.,* 9).

Finally. This application, as stated on the argument, is made to the court within twenty-four hours of the time fixed by the board of canvassers for their final adjournment. To issue the writ asked for at this late stage of the board's proceedings might work great injustice and cause increased expense, and while I do not intend to be understood as holding that, in a perfectly clear case, I should not exercise the

power confided to the court to grant a writ of *mandamus*, I deem it more prudent and just, in the case at the bar, to follow the elementary rule that the writ should not be issued where the relator has not a perfectly clear legal right to demand that for which he asks (*People* agt. *Supervisors Chenango*, 1 *Kernan*, 563; *People* agt. *Easton*, 13 *Abbott* [*N. S.*], 159; *Reeside* agt. *Walker*, 1 *How.* [*U. S.*], 272, 289; *People* agt. *Green*, 1 *Hun*, 1).

The motion for a writ of peremptory *mandamus* is, therefore, denied.