---

(No. 15608.—Reversed and remanded.)
FRED METHENY *et al.* Appellants, *vs.* A. W. PICKEL, Appellee.

*Opinion filed December 19, 1923.*

1. ELECTIONS—*when voters may testify how they voted at a school election.* Where each candidate for school director has his own printed ballots, which are voted as printed, so that no ballot can be identified as having been cast by any particular voter, the candidate who is apparently defeated by the count of the ballots and the judges' returns may, on a contest charging fraud of one of the judges, call witnesses to testify orally that they voted for him and thereby sustain the charge of fraud. (*City of Beardstown* v. *City of Virginia,* 76 Ill. 34, distinguished.)

2. SAME—*fraud may be shown by circumstantial evidence.* The result of an election may be determined in a contest by a consideration of both the ballots and the returns and all other circumstances presented on the hearing, and fraud may be shown by circumstantial evidence.

3. SAME—*parol testimony of voters should be admitted with caution.* In an election contest great precaution should be used in admitting parol testimony of voters indicating that they voted differently from what the ballots, properly preserved, tend to show.

THOMPSON, J., dissenting.

APPEAL from the County Court of Clay county; the Hon. R. S. C. REAUGH, Judge, presiding.

HAROLD S. WILLIAMS, for appellants.

JAMES H. SMITH, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an election contest heard in the county court of Clay county as to the office of school director in one of the districts in that county. The trial court, after a recount,

decided that appellee, Pickel, was elected. Fred Metheny, the other candidate, and J. S. Tully and B. B. Sefton, electors in the district, bring the case here by appeal.

The election in question was held April 14, 1923, at the school house in the district, and no question appears to be raised as to it being held at the proper time or place, or that due notice was given thereof, or as to the form of the printed ballots. The contestant introduced as a witness Mrs. Kate Conroy, who testified that she was school treasurer of the township in which this district is located; that she received the returns and the ballots of this election from Charles C. Morris and Dr. D. E. Fatheree, the two judges of the election, at five o'clock P. M. of election day, and that she filed them in the vault of the First National Bank, where they remained until removed to be taken to the court at this hearing; that the packages were in the same condition, in all respects, as when handed to her, except that the large envelope, which contained several exhibits but not the ballots, was sealed by her with mucilage before the papers were removed from the bank. The court allowed the ballots and returns to be introduced in evidence and appointed two tellers to aid in counting the ballots. The returns of the election officials showed 84 votes for Metheny, 123 for Pickel and two for Emmet Colclasure, these latter two being cast by mistake in this district, as Colclasure was running for school trustee at another polling place on the same day. The re-count by the county court showed the same figures for Metheny and Colclasure but two more votes (or 125) for Pickel.

It appears from the evidence that the polls were opened at two o'clock and closed at four on the day of the election. Charles C. Morris and Dr. D. E. Fatheree, two of the school directors, acted as judges, and Mrs. Maud Howland, wife of another director, served as clerk, as her husband was absent in St. Louis on business on that day. Mrs. Howland, being called to act not long before the election started, was

not able to arrive at the polling place until a short time after the polls were opened, and until her arrival Miss Brickey, one of the high school teachers, acted as clerk and took the names of the first 23 voters. Mrs. Howland testified that she remained in the polling place from the time she arrived until after the votes were counted and ready to be given to Mrs. Conroy, except about eight minutes when she voted for school trustee at another polling place, during which time 17 votes were cast, and Mrs. Fatheree, wife of one of the directors, filled the vacancy. The ballot-box was a large pasteboard box which had been used for packing Sunshine biscuits and around which was placed a string running across each side. Over the knot where the string was tied was placed sealing wax and an impression seal, and a slot was cut in the top for the reception of the ballots. The box was prepared by Morris and Fatheree before the opening of the polls. The voters handed their ballots to Morris, whose duty it was to drop them into the box, and Mrs. Howland acted as clerk and took the names of the voters. When the polls were closed the two judges and clerk proceeded to cut open the box and dumped the ballots on the table in the same room of the school building in which the election had been held, and after sorting them into piles for the various candidates the ballots in each pile were counted, and apparently re-counted until all three of the officials expressed themselves as satisfied as to the correctness of the count, and then the returns were made up. After taking Mrs. Howland to her home in their automobile the two men proceeded to the bank and left the ballots and returns with the township treasurer, Mrs. Conroy. No one was present during the counting of the ballots except the three mentioned.

It is urged in the appellants' brief that Charles C. Morris, one of the judges, did not put some of the ballots into the box directly upon their receipt but held them for a time

in his hand. We find upon examination of the testimony of some 118 witnesses that about 63 testified positively that they saw Morris put their ballots in the box. Many of the others testified that they went away immediately upon voting and did not notice particularly what was done with their ballots. Several voters testified that Morris was holding their ballots over the slot in the box when they left. We find no direct testimony of any witness who claims Morris substituted or changed a ballot, and Morris himself testified that he simply held the ballot in his hand until the clerk should have an opportunity of writing down the name before the ballot was deposited in the box.

Appellant Metheny, through his counsel, offered to the trial court the testimony of numerous voters to the effect that they had voted for him, the number of such witnesses being 34 more than the votes counted for Metheny in the returns made by the judges. Counsel for appellee objected to the testimony of these witnesses on the ground that the ballots, under the laws of Illinois, when properly preserved, are the original and best evidence; that the contestants having offered the ballots in evidence are bound by them as by witnesses; that this testimony was incompetent and an attempt to impeach written evidence by parol testimony. The trial judge stated that while he had grave doubts as to the competency of these witnesses he would admit the testimony subject to objection. Thereupon 118 witnesses were introduced, who each testified that he or she had voted at the election for Metheny. It appears to be admitted that three of these were not legal voters in the district.

The ballots used at this election were printed and distributed by the respective candidates or their friends, the ballots for Pickel being headed "For School Director," with his name printed beneath, and the ballots for Metheny had a like heading, with his name printed beneath. The voters did not mark a cross in a square but simply voted the ticket with the candidate's name printed thereon. The evidence

tends to show that both Pickel and Metheny stood at the
front of the school house and handed their ballots to the vot-
ers as they came to vote.    Many of the voters testified that
they voted the ballot of their choice from the two thus given
them and put the other in their pocket.    There was also a
supply of the ballots on the table for voters not thus pro-
vided, and a few of the voters testified that they were given
ballots by friends of the candidates before coming to the
polling place.

The petition for contestant averred that certain ballots
cast for Metheny were not placed in the ballot-box at all,
but by fraud, connivance and deception ballots for Pickel
were substituted and placed in the ballot-box; that the pur-
ported count and returns were brought about by the con-
nivance of Fatheree and Morris, and that Fatheree and
Morris agreed to make fraudulent returns of the result, pur-
porting to show the election of Pickel, instead of a true
and correct count and returns, which would show the elec-
tion of Metheny.    The answer of appellee denied any fraud
or conspiracy in the conduct of such election.

It is apparent from the testimony, briefs and oral argu-
ments that were made on the hearing of this case that
there was considerable feeling in the community over this
school election.    This feeling had not grown up simply on
this occasion, but was the result of a difference of opinion
between two or more groups in the district which had ex-
isted for some time.    There seems to be no claim that Mrs.
Howland had anything to do with any wrongdoing con-
cerning the election, and no claim is made by the testimony,
or in the petition itself, as to Fatheree having any desire
to nullify the wish of the voters, the chief criticism in the
briefs being directed toward Morris.

The case under consideration presents a very peculiar
and unusual question for decision.    Leaving out the testi-
mony of the 118 witnesses that they voted for Metheny,

there is practically nothing in the evidence that would lead to the conclusion that the election was not conducted and the returns made in a fair and lawful manner. While some point is made in the briefs that Morris held some of the ballots longer than necessary and had within his reach printed ballots for Pickel and could have changed many of the ballots before the ballot actually given him by the individual voter was placed in the ballot-box, and there is testimony by one witness that Morris unfolded and looked at one of the ballots handed him before placing it in the box, yet we find no positive, direct testimony that Morris changed any ballot before putting it in the box. On the other hand, 118 voters testified they voted for Metheny, whereas the returns only gave him 84 votes. Unless 34 of these voters were not telling the truth or each voted a ballot he did not intend to vote, the returns made by the judges do not correctly represent the ballots as cast.

The chief question for consideration is whether the oral testimony of the 118 witnesses as to how they voted should be admitted. Counsel for appellee earnestly contends that under the decisions of this State and the law generally, the parol testimony should not have been admitted, relying particularly on the reasoning and decision of this court in *City of Beardstown* v. *City of Virginia,* 76 Ill. 34, where this court said (p. 48) : "Three persons were counted for removal, and the ballots disclosed that they so voted. Each one, however, testified that he voted against removal. Nothing more than that is disclosed or claimed of any fraud or mistake. Appellants insist that the will of the electors should be carried out and the so-called mistake be corrected. We know of no precedent or principle for such a proceeding. The intention of the elector cannot be thus inquired into when it is opposed to the paper ballot which he has deposited in the ballot-box. That is to prevail as the highest evidence of his intention. (*People* v. *Seaman,* 5 Denio, 409; *People* v. *Saxton, 22* N. Y. 309.) Were there inde-

pendent proof of fraud a different question would be presented." That case does not present the precise question presented to us in the case at bar, as in the former decision the ballots which the witnesses voted were distinguished and known and showed to the court that they had been cast, there being no question of a change in the ballots, while in this case the ballots were all printed and could not be distinguished one from the other and no voter testified that a certain known ballot was not as he voted it. If the testimony of these 118 witnesses, or of a considerable percentage of them, is to be believed, then the 84 ballots counted for Metheny were cast by 84 of them and 34 of the ballots that were counted for Pickel were substituted for the Metheny ballots cast by 34 of these witnesses. It is clear from a reading of later decisions of this court that it was not intended by what was said in the opinion in the *City of Beardstown case* just quoted, that this court was committed to the doctrine laid down in that case on the question of declarations of voters as to disqualification, for in the same case, heard again by this court and reported in 81 Ill. 541, this court said (p. 549) : "In respect of five of the cases under this head there is presented the question of the admissibility of the declarations of voters to show their disqualification to vote where the fact of how they voted is made to appear by other testimony. As stated in the former opinion, it is the practice of legislative bodies in election contests to admit such declarations to more or less extent. There is but little judicial authority on the subject, and that conflicting. *People* v. *Pease,* 27 N. Y. 45, and *State* v. *Olin,* 23 Wis. 311, are authorities in favor of, and *Gilliland* v. *Schuyler,* 9 Kan. 569, against their admission. Under the state of the authorities on the subject we will not commit ourselves to any absolute rule of admission or rejection of such declarations further than may be necessary for the decision of the present case."

We are of the opinion that the question in this case comes more nearly under the rule laid down in *Kreitz* v. *Behrensmeyer,* 125 Ill. 141, where this court said (p. 177) : "It is undoubtedly true that a voter cannot be allowed to say that he voted for one person when he admits that he cast a ballot, which has not since been changed, showing that he voted for another person. But this is merely upon the principle that a writing cannot be contradicted by parol. It is, however, always competent to show that even the most solemn writings are forgeries, and a ticket which has been changed by a paster to read as a vote for a man for a particular office different from the man for whom it read as a vote in the condition in which it was when cast is a forgery. And the same is true where the ballot, after it is cast, is destroyed and another and different ballot is put in its place. Quite clearly, therefore, this evidence would have proved that one ballot counted for appellee was not evidence of a lawful vote cast for him, but, on the contrary, that the vote should be counted as a vote given for appellant, and was, therefore, directly responsive to the allegation of the petition." The doctrine just quoted was later approved by this court in *Behrensmeyer* v. *Kreitz,* 135 Ill. 591. There can be no question, therefore, that the doctrine so strongly relied on by counsel for appellee in this case as set forth in the *City of Beardstown case* is not necessarily controlling as to the admission of parol testimony in a case of this kind in the courts of this State.

It should also be borne in mind that the conduct of this election for school director was not controlled by the Australian Ballot law. (*Lewis* v. *Community High School District,* 308 Ill. 305.) We do not find any decision of this court construing the Australian Ballot law that would in any way conflict with the reasoning heretofore laid down in this opinion as to parol testimony being admissible, under proper conditions, in an election contest. Under the standard authorities, where fraud is alleged a very broad

range is given to the testimony.  (Jones on Evidence,—
2d ed.—547.)  "When charges of fraud are made * * *
the mode and measure of proof should be as broad as the
charges.  The best evidence should be available in the search
for fraud.  This best evidence is ofttimes locked up in the
ballot-boxes and the poll-lists or books.  When *bona fide*
charges of fraud are made it should be the policy of the
law to unlock all competent evidence to either prove or dis-
prove the charges."  (*Gant* v. *Brown,* 238 Mo. 560; see,
also, p. 568; 20 Corpus Juris, 254, and authorities cited.)
"It is established in equity that no rule of law shall be used
for the purpose of protecting fraud, and that while in gen-
eral the rules of evidence are the same in equity as they are
at law, yet in cases of accident, mistake or fraud parol evi-
dence is admissible for the purpose of making out the com-
plainant's case, although the effect of the admission may be
to alter or add to a written instrument.  This equitable rule
arises from the necessity of the case and in order that the
jurisdiction of courts of chancery in such cases, particularly
those of fraud, may be effectively asserted."  (Bispham's
Eq.—10th ed.—441.)

    We do not lay down the rule that in all cases the tes-
timony of the voters shall be taken in preference to the
ballots.  Neither the ballots nor the returns of the election
officials are necessarily controlling as to the result in an
election contest.  This result may be determined by a con-
sideration both of the ballots and the returns and all other
circumstances presented on the contest hearing.  Fraud may
be shown in an election contest by circumstantial evidence.
(*Brents* v. *Smith,* 250 Ill. 521.)  This court said many
years ago in the election contest of *County of Lawrence* v.
*Schmaulhausen,* 123 Ill. 321, that in an election contest this
court is not limited to the particular form of evidence to
which the canvassing board is restricted by the statute.  And
so evidence in a contested election case, to prove or disprove
the right to an office, is not limited to the result as declared

by the election officers but the whole proceeding may be investigated and the true result ascertained. This same doctrine has been approved by this court in later decisions. (See *Schuler* v. *Hogan,* 168 Ill. 369; *Choisser* v. *York,* 211 id. 56.) Great precaution should be used in admitting parol testimony of witnesses indicating that they voted differently from what the ballots, properly preserved, would tend to show. Particularly would this be true where there was only a difference of one or two votes, where some voter might be induced to testify falsely for a consideration. In such case it might be dangerous to allow the testimony of one or two voters to overcome the showing made by the ballots cast and which had been kept and properly preserved by the proper public authorities. But in this case it would be extraordinary to believe that 34 voters testified falsely that they voted for Metheny, under all the circumstances shown in the record.

While we do not think the testimony would indicate that the case should be reversed on the ground that the rules of law had not been properly observed by the judges and clerk of this election, yet, taking into consideration the entire record, we are constrained to hold that the record shows that Metheny received a majority of the votes cast for school director at the election in question and is entitled to hold that office.

The judgment of the county court of Clay county is reversed and the cause remanded, with directions to find for the contestant, in accordance with the rules herein set forth.

*Reversed and remanded, with directions.*

Mr. JUSTICE THOMPSON, dissenting.