(No. 25421.—)
STEWART DIRST, Appellee, *vs.* MICHAEL McDONALD, Appellant.

*Opinion filed December 15, 1939.*

ROBERT W. MARTIN, for appellant.

EDWARD R. NADELHOFFER, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

On April 4, 1939, the regular township election was held in Channahon township in Will county, Illinois, for the offices of supervisor and other officials. Stewart Dirst was Republican nominee and Michael McDonald Democratic nominee for supervisor. The township comprised one election district with one voting place. Canvas of the election showed Dirst to have received 256 votes and McDonald 258 votes. On April 13, 1939, a petition to contest the election was filed by Dirst against McDonald in the county court. On re-count of the ballots not objected to, the result was Dirst 258 and McDonald 254. There were seven ballots objected to and of these two were held bad and not counted for any one. One was counted for Dirst and four for Mc-Donald, making the result, before the taking of testimony on illegal ballots commenced, Dirst 259 and McDonald 258.

The court heard testimony as to a considerable number of illegal voters and of these the court found six had voted for McDonald and deducted them from his 258, leaving 252. It also found that seven illegal votes had been cast for Dirst, which, deducted from his total, left 252. The court then found that seven other illegal votes were cast and that it was unable to tell for whom they had voted, and deducted three and one-half votes from each candidate, leaving the final result, Dirst 248½ and McDonald 248½,

the result being a tie. Thereupon, as provided by statute, a coin was flipped and Dirst won the toss and was adjudged by the county court to be the duly elected supervisor of the town of Channahon. Pursuant to the statute McDonald appeals directly to this court.

Appellant assigns error on the finding of the court as to four of the illegal voters who testified that they voted for Dirst, whom the court declared he disbelieved; on the action of the court in holding that one, Nick Carrico, had voted for McDonald, when he testified that he had voted for Dirst, and, also, on the action of the court in holding that Elizabeth Boohr, who had voted for Dirst, was a legal voter. These four votes above mentioned were included among the seven which the court found were illegal and deducted proportionately from each candidate.

The sole question in this case, aside from whether Elizabeth Boohr had a legal residence in the township, is whether the court was justified in disbelieving the testimony of the five illegal voters specified in the assignment of errors. No question is raised as to the propriety of the court's action in counting the votes, based upon the findings it did make.

The voter Elizabeth Boohr was married in 1930 at the age of eighteen and her husband was then not yet twenty-one. For about one and one-half years after their marriage they lived in Channahon. He voted in Channahon once after their marriage and before he joined the navy. He was stationed at the port at San Diego. Mrs. Boohr accompanied him, but neither he nor she voted in California while stationed there. Mrs. Boohr voted an absentee ballot in Channahon while living in California. They had furniture stored in her parents' home, consisting of a bedroom set, shades, victrola and chairs, and she was at her father's house at the time she voted in this election.

In *O'Hair* v. *Wilson*, 124 Ill. 351, it was held that a voter who had been in the military service for several years was a resident of the State from which he enlisted and en-

titled to vote there after his return. The rule is thus stated in 20 Corpus Juris, 73; "The general rule is that persons employed in the service of the United States government neither acquire a residence for the purpose of voting in the election district in which they may be stationed, nor lose their political domicile in the place from whence they came." The evidence shows that the husband of Mrs. Boohr lived in Channahon township before he joined the navy, never voted elsewhere, and that she, by absentee ballot, voted in this election while stationed in California, and, being in the election district at the time of the election in question, she was a legal voter.

A plea of release of errors has been filed in this cause by appellee. In summing up the testimony the court made an error in counting the illegal votes charged against Dirst. When this was called to its attention and before it had entered a decree, the error was corrected. The order recites that no decree had been entered at the time the findings were corrected. Acts done before the entry of a decree cannot be the basis of a plea of release of errors. *Fishburn* v. *Green*, 291 Ill. 350.

There were twenty illegal votes cast. Sixteen of these voters lived outside of the township. One had been convicted of an infamous crime and not restored to citizenship; one had married an alien and had never become a citizen, and two others had not lived in the election precinct for the period of thirty days prior to the election. From testimony the court found that six of the illegal voters voted for McDonald and deducted six votes from McDonald's total. It found that seven of them voted for Dirst, and took seven votes from Dirst's total. As to the seven remaining illegal voters, Dempsey said he voted for Dirst, Feeney for McDonald, Maxwell for McDonald, Powell for Dirst, Sandahl for Dirst, Blum for Dirst and Schmidt for Dirst. For various reasons set forth in the record, the court made a specific finding that it did not believe their testimony. It is based, in some instances, upon the attitude of the witness

upon the stand, and, in some instances, on contradiction or contrary statements or evident partisanship. Most of these illegal voters lived in a "C.C.C." camp and there is evidence in the record tending to show that a group of these men were informed that if they were illegal voters and testified they voted for a given candidate, such candidate would lose the entire vote and the opposite party gain one. There were sixteen illegal voters whose testimony was weighed by the court and a determination made of the person for whom they voted. As far as the record discloses there was no different method or manner adopted by the court in weighing their testimony in any instance. Appellant has singled out five of these illegal voters and says the court erred in disregarding their testimony. Appellant also makes it plain he is not intimating or claiming that the trial court's ruling on these five witnesses arose out of any caprice, prejudice or other motive, but simply grows out of its alleged disregard of rules of law in weighing the testimony of the witnesses. We have examined the record carefully and cannot say the court's conclusions are against the manifest weight of the evidence. In these findings the court gives briefly its specific reasons; it was not necessary for it to amplify them at length. In the findings of the court we cannot distinguish any difference in the manner of determining the result in the case of the five witnesses than those of the other eleven passed upon by the court. In an election contest the finding of the trial court which observed the demeanor of the witnesses while testifying, will not be disturbed on appeal unless it is palpably against the manifest weight of the evidence. (*Rogers* v. *Meade,* 363 Ill. 630; *Baker* v. *Hinrichs,* 359 id. 138.) There is nothing in this record indicating the trial court acted from caprice or prejudice, and as its findings are based on the evidence, the judgment of the county court of Will county is affirmed.

*Judgment affirmed.*