(No. 26233.—

Felix Laleman, Appellant, *vs.* E. O. Bredesen *et al.* Appellees.

*Opinion filed September 17, 1941.*

Wood, McNeal & Gehlbach, for appellant.

Eagle & Eagle, (Edward L. Eagle, Jr., of counsel,) for appellees.

Mr. Justice Gunn delivered the opinion of the court:

On June 29, 1940, an election was held in School District No. 24, Rock Island county, Illinois, for the purpose of electing two members of the school board to fill existing vacancies, one being for two years and the other for one year. There were two candidates for each position, and at the close of the polls the election board declared E. O. Bredesen, one of the appellees, elected for the period of two years, and Cyrus Hungerford, the other appellee, elected for the one year vacancy. A petition to contest the election was filed on July 22, 1940, by Felix Laleman, a legal voter and taxpayer in said school district. Upon a trial in the county court of Rock Island county the court

found the said E. O. Bredesen and Cyrus Hungerford were duly elected. Under the statute the appeal comes directly to this court.

On the day of the election and prior to the opening of the polls, a caucus was called by a director of school district No. 24 for the purpose of nominating candidates to fill the two vacancies. Appellee Bredesen and Herman Nitz were nominated to fill the two-year vacancy, and appellee Cyrus Hungerford and Anna Hanna nominated to fill the one-year vacancy. Frank Whiteside, one of the school directors, acted as judge of the election, and the voters chose Lulu Steffen to act as additional judge, and Claire Smith to act as clerk. Forty-eight ballots were cast. The official ballots had two lines printed upon them, in which the names could be written, one being for the two-year period and the other for the one-year period. After the polls were closed the votes were counted and the result announced, showing that appellee Bredesen had received twenty-five votes for the two-year period, and Herman Nitz twenty-three votes; that Cyrus Hungerford received twenty-five votes for the one-year period and Anna Hanna twenty-three votes. Claire Smith took the poll-book and the ballots to his home, and on July 7, 1940, they were delivered to the township treasurer, together with the certificates, showing the election of directors and the names of appellees Bredesen and Hungerford as the persons elected members of the school board to fill the two vacancies. The poll-book and the certificates showed the results above noted. It appears the election officials subscribed the oath after the polls closed, but no notice was taken of this in the complaint.

The petition for contest alleged there were only forty-six legal votes cast, and that the judges and clerks erroneously and fraudulently made the poll-book and certificates show that appellees were elected; that they illegally permitted Goldie Hull and Idella Smith to vote at such election without being qualified therefor. The petition further

alleged that Herman Nitz and Anna Hanna each received twenty-five votes. Accompanying the petition was an affidavit of twenty-five persons that they had voted at said election for Herman Nitz and Anna Hanna to fill such vacancies. No evidence was offered showing Idella Smith to be a disqualified voter.

Upon the trial of the cause twenty-five voters appeared and over the objection of counsel for appellees testified that they voted for both Nitz and Hanna. The original ballots are certified to this court. It was stipulated at the trial that the ballots and poll-list and canvass-sheet were in the same condition as they were at the time the officials completed their count on the day of election. Appellant has adopted a novel and unusual method of attempting to show that the written ballots, regular upon their face in all respects, do not show the true result. As pointed out above, each ballot had the name of the candidate written upon it by the voter. Appellant has taken similar ballots and had each of the twenty-five voters, claiming to have voted for the losing candidates, write the names of such candidates thereon, together with their own signature at the top thereof. Photostats of all such samples, as well as the original ballots, appear in the brief of appellant.

It is also claimed that twenty-three voters were able to identify the names of Nitz and Hanna, which they each wrote upon the ballots; Agnes Nitz and George M. Garrett testified they could not find among the ballots any upon which their handwriting appeared. Upon cross-examination, Garrett could not remember definitely which of the candidates he picked for the one and two-year term respectively. One of the witnesses, George T. Hill, who testified he voted for the contestants, is claimed by another witness to have told him he voted for the other candidates. And another witness for contestants, Lloyd Hanna, is claimed to have told one Henry Steffen that he had voted opposite to what he testified.

The manifest cause of this contest was the conduct of the clerk, Claire Smith. He described himself as the "village cut-up." As the ballots were counted, and after Whiteside had counted up to forty-eight, and this number had been checked against the number in the poll-book, Claire Smith continued counting "forty-nine, fifty, fifty-one," when all of the judges and clerks and everybody interested concede only forty-eight votes were cast. To justify his conduct he says he was "kidding," because he thought the people were too gullible. This conduct was reprehensible, and undoubtedly produced an impression there was something irregular about the election. No fraud of any kind has been shown in the conduct of the election, or in the making up and preserving of the record and ballots, and the only ground upon which the result is sought to be contested is by the testimony of voters as to whom they voted for, and that of the two witnesses who could not identify among the ballots the ones written by them. This situation shows the wisdom of making the ballots themselves the best evidence, except in extraordinary cases, and then contrary evidence may only be received with great caution. *Metheny* v. *Pickel,* 310 Ill. 309.

There is evidence in the record that some of the persons who claimed they voted for the losing candidates voted for the other candidates. The judge who tried the case saw the witnesses and heard the testimony, and was in the best position to judge the merits of the case. His finding will not be overruled unless we can say it is obviously against the weight of the evidence. (*Dirst* v. *McDonald,* 372 Ill. 498.) Moreover, in cases of this kind, in the absence of any proof that more ballots were cast than there were voters at the election, no matter is presented that would justify the court in determining the result by the comparison of handwriting. It is only in extraordinary cases that resort may be had to the testimony of the voters as to how they cast their ballots, such as proving a ballot has

been forged, or changed or destroyed, or other positive proof of fraud. (*Kreitz* v. *Behrensmeyer,* 125 Ill. 141; *City of Beardstown* v. *City of Virginia,* 76 id. 34; *Metheny* v. *Pickel, supra.*) Proof of fraud is absent in this case and it is no rare thing for a voter to cast his ballot in a different manner than he has indicated to one or the other of the candidates.

Inasmuch as no sufficient reason has been shown why the result should not be determined from the ballots themselves, it is unnecessary to pass upon the question of the qualification of Goldie Hull, as the result would not be changed by finding she was disqualified from voting.

The judgment of the county court of Rock Island county is affirmed.                                        *Judgment affirmed.*